## Handwerker *v.* Diermeyer.

*(Jackson.* May 21, 1896.)

1. HUSBAND AND WIFE. *Wife's interest in a benefit certificate.*

   The wife takes no vested interest, but a mere expectancy that ceases upon her dying before her husband, in a certificate taken out by the husband for her benefit in a benevolent order— *e. g.,* Knights of Honor—whose by-laws permit him to change the beneficiary at his pleasure. (*Post, pp. 625–627.*)

   Cases cited: Life Association *v.* Wynne, *ante,* 224; Tennessee Lodge *v.* Ladd, 5 Lea, 721; McLean *v.* McLean, 6 Hum., 452.

2. SAME. *Wife's interest in life insurance.*

   The wife has no vested interest in an ordinary policy of life insurance upon the husband's life in which she is named as beneficiary, which is transmissible by descent upon her dying before her husband. (*Post, pp. 624–627.*)

   Code construed: §§ 3135, 3278, Subsec. 3 (M. & V.); §§ 2294, 2429 (T. & S.).

   Cases cited: Gosling *v.* Caldwell, 1 Lea, 454; Insurance Co. *v.* Booker, 9 Heis., 619; Tennessee Lodge *v.* Ladd, 5 Lea, 721.

3. SAME. *Insurance taken by husband as a chose in action.*

   If a benefit certificate taken out by a husband payable to his wife, and a policy on his life payable to her, are to be considered vested property interests of the wife, they are mere choses in action which, upon her death before that of her husband, become the absolute property of the latter. (*Post, pp. 627–629.*)

   Cases cited and approved: Scobey *v.* Waters, 10 Lea, 551; Mutual Protection Co. *v.* Hamilton, 5 Sneed, 269; Rice *v.* McReynolds, 8 Lea, 37; Tune *v.* Cooper, 4 Sneed, 296; Miller, *ex parte,* 2 Lea,

Handwerker *v.* Diermeyer.

57, 58; Joiner *v.* Franklin, 12 Lea, 422; Wade *v.* Cantrell, 1 Head, 346; 85 N. Y., 593.

FROM SHELBY.

Appeal from Probate Court of Shelby County. J. S. GALLOWAY, J.

WM. M. RANDOLPH & SONS for Handwerker.

W. B. GLISSON for Diermeyer.

MCALISTER, J. The question presented upon this record is in respect of the proper distribution of a fund by a guardian between two wards. The facts are practically undisputed, and are thus clearly stated in the brief of counsel for the guardian, viz.: "Prior to the year 1879, Frances Croisant, then a widow, married George Getz. Her first husband's name was Croisant, and by him she had two children, Elizabeth Croisant and Louis Croisant. After her marriage to George Getz she had two children by him, Frances and Mary Getz. During his lifetime George Getz, the husband, took out a benefit certificate in the Knights of Honor, which was made payable to his wife, the said Frances Getz. He also took out two policies of life insurance in the New York Globe Mutual Insurance Company, which were also payable to his wife, Frances Getz. Sub-

sequently, in the year 1879, during the yellow fever epidemic, the following members of the family died intestate, and in the following order: First, Louis Croisant, one of the children of the first marriage; then Mrs. Frances Getz, the mother; then George Getz, the husband; then Frances Getz, one of the children of the second marriage.''          .          .          .

At the time the benefit certificate was taken out, and at the date of the death of all the parties, the laws of the Knights of Honor provided, viz.: ''Each member shall enter upon his application the name or names of the members of his family or those to whom he desires his benefit paid, subject to such further disposal of the benefit as the member may hereafter direct, in accordance with the laws of this order, and they shall be entered in the benefit certificate according to such direction.'' This further law was also in force, to wit: ''A member may, at any time while in good standing, surrender his benefit certificate with the directions to whom a new certificate is to be made payable, and a fee of fifty cents shall be forwarded by the reporter of his lodge, under seal, to the supreme reporter, who shall thereupon cancel the old certificate and cause a new certificate to be issued to such member, payable as he shall direct.''

The two policies of life insurance were taken out by George Getz in the Globe Mutual Life Insurance Company, and each policy was for one thousand dollars. The policies were payable to Frances Getz,

the wife of George Getz. The record shows that
J. G. Handwerker qualified as the guardian of Eliz-
abeth Croisant and Mary Getz about the seventeenth
of May, 1880. The guardian collected the sum of
two thousand dollars on the benefit certificate in the
Knights of Honor and six hundred dollars on the
two policies in the Globe Mutual Life Insurance
Company, which was the *pro rata* on those policies,
the company having become insolvent. About the
first of October, 1894, the ward, Elizabeth Croi-
sant, married her present husband, W. C. Diermeyer.
On the sixteenth of October, 1894, J. G. Hand-
werker, as guardian, filed a report of his accounts
with his said two wards for the years 1888–1894,
inclusive. This report did not attempt to make any
division of the two funds, and again called attention
to the fact that the Court should divide the same.

After some further reports and references, not
necessary to be mentioned, the Court adjudged that
the ward, Elizabeth Croisant, was entitled to one-
half of the two thousand dollars from the benefit
certificate in the Knights of Honor and one-half of
the six hundred dollars from the two life policies,
and that the ward, Mary Getz, was entitled to the
other half of said two funds. From this decree the
said J. G. Handwerker, guardian, appealed to this
Court, and has assigned errors.

The third assignment is as follows: "The Court
erred in not finding and decreeing that, under the
laws of the Knights of Honor and the terms of

the benefit certificate, Frances Getz, wife of George Getz, to whom the certificate was payable, took no vested interest in the certificate, and the only interest she had therein was a mere expectancy, and that upon her death before her husband this expectancy ceased, and upon the death of George Getz the certificate descended from him to his two children, Frances Getz and Mary Getz, in equal proportions, or one thousand dollars each; and that upon the death of the child, Frances Getz, her one thousand dollars passed equally to her full sister, Mary Getz, and her half - sister, Elizabeth Croisant; that is to say, five hundred dollars to each, making Mary Getz the owner of one thousand five hundred dollars and Elizabeth Croisant the owner of five hundred dollars, instead of one thousand dollars."

The fourth assignment is that the Court erred in decreeing that the ward, Elizabeth, was entitled to one-half of the six hundred dollars derived from the two policies of insurance, and in not decreeing that she was only entitled to one-fourth of said fund, to-wit, one hundred and fifty dollars.

The fifth assignment is that the Court erred in not decreeing that on the death of Frances Getz, the wife, the two life insurance policies payable to her being choses in action, became the property of George Getz absolutely, by reason of the fact that he was husband, and on his death the two policies passed to his children, Frances and Mary Getz, one-half to each, and upon the death of the child,

Frances Getz, her three hundred dollars passed one-half to her sister, Mary Getz, and one-half to her half - sister, Elizabeth Croisant, making Mary the owner of four hundred and fifty dollars and Elizabeth the owner of one hundred and fifty dollars.

As opposed to the contentions of the guardian, it is insisted by counsel for Elizabeth Croisant that the insurance policies, having been made payable to Frances Getz, the wife, she immediately became vested with an interest of which she could not be deprived, citing M. & V. Code, § 3135; 1 Lea, 454.

The argument is that the interest with which she became vested was a separate estate, and that, as such, upon her death it went to her three children equally, under the statutes of distribution, citing *Southern Life Ins. Co.* v. *Booker*, 9 Heis., 619; 5 Lea, 721; M. & V. Code, § 3278, Sub-sec. 3.

In respect to the benefit certificate in the Knights of Honor two contentions are made. First, that it must be treated as insurance, and is governed by the rules above cited; second, if it does not pass under the statute of distribution as insurance, it passes under the terms of the benefit certificate and the laws of the order, which authorizes the member to dispose of it by will, which was done in this case.

It is insisted the record shows that when George Getz applied to become a member of the order, he directed his benefit to be made payable to his wife, Frances Getz; that when he took the third degree

and received his benefit certificate he made this disposition of it by will, viz.:

"*To the Officers and Members of the Supreme Lodge Knights of Honor:*

"BROTHERS—It is my will that the benefit named in this certificate be paid to Mrs. Frances Getz, my wife. (Signed) GEORGE GETZ."

The insistence, therefore, is, that the direction of payment made by George Getz, in his benefit certificate, was his will. And although the legatee, Mrs. Getz, died before the testator, that her issue surviving the testator would take the estate bequeathed to her. M. & V. Code, §§ 3036, 3276. We think this contention cannot be sustained.

In the case of *Tennessee Lodge* v. *Ladd*, 5 Lea, 721, in speaking of a similar direction in a benefit certificate, this Court said, viz.: "Such an instrument, attested by two witnesses, might be proved as a will of the fund under our law," citing *McLean* v. *McLean*, 6 Hum., 452. It may be remembered, in the first place, that there is no proof in this record of the attestation of said alleged will by two witnesses, or, indeed, by any witness. Said instrument has not been probated as a will, nor can we see, from this record, how it is susceptible of such formal proof. It is very clear to us that the wife took no vested interest in this certificate, but a bare expectancy, which was contingent upon surviving her husband. Under the rules and by-laws of the Knights

of Honor, any member of the order has a right to change the beneficiary in his certificate, and as long as he lives the said certificate is within his absolute power of disposition.

In the case of *Fidelity Mutual Life Association* v. *Wynne, ante,* 224, the policy provided, viz.: "The member or insured may, upon the approval of the president, change the beneficiary herein named by surrendering this policy and designating another beneficiary, having a lawfully insurable interest. in the life of the insured, in which event the within named beneficiary shall have no claim upon or be entitled to receive anything whatever from the association." In respect of that policy, the Court said, viz.: "Under such a policy the beneficiary acquires no vested interest until the death of the assured occurs. Until this event takes place, owing to the right of revocation which is, by the condition, reserved to the assured, the beneficiary has a mere expectancy, depending upon the will and act of the assured. And this expectancy does not rise to the dignity of a property right."

We think, upon the death of Frances Getz, her children acquired no interest in said fund through her, but the certificate remained the property of the father, George Getz, and upon his death descended to Mary Getz and Frances Getz, his two living children. Elizabeth Croisant, the stepdaughter, could not inherit any part of the fund from her stepfather. Upon the death of Frances Getz, the daughter, her

.terest passed to her full sister, Mary, and her half-sister, Elizabeth Croisant, share and share alike.

If it be assumed, as insisted by counsel for Elizabeth Croisant, that the benefit certificate was the property of Frances Getz, it being a chose in action, it became the property of the surviving husband. The same may be said in respect of the two life policies. Although payable to Mrs. Getz, they were mere choses in action, which, upon her death, became the absolute property of the husband. It has been held that a life policy is a mere chose in action. See *Scobey* v. *Waters*, 10 Lea; *Mutual Protection Co.* v. *Hamilton*, 5 Sneed, 269; *Olmstead* v. *Keyes*, 85 N. Y., 593.

In *Rice* v. *McReynolds*, 8 Lea, 37, the Court said, viz.: "We take it to be too clear for argument or need of authority that the husband is entitled to receive and reduce to possession, during coverture, all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage or accruing to her afterwards. If he fails to reduce them to possession during the coverture and survives the wife, then his administrator, as personal representative, is entitled to them, and may sue for and recover them." *Tune* v. *Cooper*, 4 Sneed, 296; *Miller, ex parte*, 2 Lea, 57, 58; *Joiner* v. *Franklin*, 12 Lea, 422; *Wade* v. *Cantrell*, 1 Head, 346.

The question now being decided arose in the case of *Olmstead* v. *Keyes*, 85 N. Y., 593, cited in the

able argument of counsel for defendant in error. In that case a policy was made payable to the wife. She died before her husband. The question was presented in respect of the disposition of the proceeds. The Court said: "The general rule of the common law is that the husband may, during the joint lives, reduce his wife's choses in action to possession and then appropriate them to his own use, or he may release them or assign them so as to bar the wife's right to survivorship. But during the joint lives the husband cannot assign or release so as to bar the wife surviving his choses in action, payable after his death or upon contingencies, or at times which do not come or happen until after his death. In such cases, however, his assignment is good as against the whole world but his wife surviving. A husband can dispose of his wife's property in expectancy against everyone but the wife surviving. All the choses of the wife not reduced to possession during the joint lives, by the common law passed to the husband upon her death — all, without any exception—and there is no authority to the contrary; and this is true whether such choses are then payable or are mere reversionary or contingent interests payable at a future day, or mere possibilities. If, after his wife's death, the husband does not release, assign, or reduce to possession her choses in action during his lifetime, then, after his death, his personal representatives are entitled to administration upon them, for the benefit of his estate, as part of

his assets.    .    .    .    Now, to apply these principles," continued the Court, "to this case, the wife's interest in this policy was a chose in action. At her death it passed to her husband."

So that, in any view of the case, Elizabeth Croisant is only entitled to one-fourth of these funds, to wit: the sum of five hundred dollars in the Knights of Honor and one hundred and fifty dollars in the policies of insurance.

The decree of the Chancellor is reversed, and a decree entered here in accordance with this opinion.