PREWITT *v.* BUNCH.

(*Nashville.* March 15, 1899.)

1. HUSBAND AND WIFE. *Husband's right to wife's property and effects.*

As a result of marriage the husband is entitled at once to the wife's property in her possession, and to reduce her choses in action to possession, including her distributive share and her funds in the hands of her guardian, and make them his absolute property. (*Post, pp. 734, 735.*)

Cases cited: Lane *v.* Farmer, 11 Lea, 568; Wade *v.* Cantrell, 1 Head, 345; Hollingsworth *v.* Mith, 5 Sneed, 472; Cox *v.* Scott, 9 Bax., 305; Allen *v.* Walt, 9 Heis., 242; Joiner *v.* Franklin, 12 Lea, 422; Handwerker *v.* Diermeyer, 96 Tenn., 619; Rice *v.* McReynolds, 8 Lea, 36; Sanders *v.* Forgasson, 3 Bax., 249; Jones *v.* Ward, 10 Yer., 168.

2. SAME. *Husband takes wife's choses in action upon her death.*

The husband, upon death of the wife, takes, either as next of kin or *jure mariti,* the choses in action of the wife which were not reduced to possession in her lifetime. (*Post, p. 736.*)

Cases cited: Hamrice *v.* Laird, 10 Yer., 222; Tune *v.* Cooper, 4 Sneed, 296.

3. SAME. *Guardianship of wife ceases on her marriage.*

Upon marriage the guardianship of the wife ceases, and her husband becomes entitled to receive or recover her funds from her guardian, even during her minority. (*Post, pp. 735, 736.*)

Cases cited: Jones *v.* Ward, 10 Yer., 168; Lane *v.* Farmer, 11 Lea, 568.

4. SAME. *Rights of, not changed by taking land in compromise of guardian's liability, when.*

The joint suit of husband and wife against her guardian for her personal funds was compromised, and settled by the guardian's conveyance of land to the wife. The husband assented to the compromise, but objected to the terms of the deed.

Thereupon it was agreed and decreed that the deed should be accepted in full satisfaction of the guardian's liability, but that it should not have the effect to exclude or in any manner affect the husband's marital rights, which, with the wife's right to an equity in the property, were reserved for future determination. It was declared to be the purpose of the decree to preserve the legal and equitable rights of the husband and wife "as respects said land." *Held:* That the land conveyed to the wife, in satisfaction of her guardian's liability, was to be treated precisely as a joint recovery of money would have been treated in fixing the rights of husband and wife therein. (*Post, pp. 736–740.*)

5. SAME. *Husband's right not defeated by laches.*

In such case the husband's delay for a period of eight years, and until after the wife's death, to assert, by suit, his rights to the property, will not repel him on the ground of laches, where it appears that his rights have not been satisfied or abandoned; that the evidence thereof is matter of record, and that the delay was for the promotion of family harmony. (*Post, pp. 740–743.*)

6. SAME. *Descent cast does not defeat husband's rights.*

Nor does the husband's delay, in such case, until descent cast upon the wife's death operate to defeat his claim. (*Post, pp. 743, 744.*)

7. SAME. *Wife's equity to settlement.*

The wife's entire estate may be settled upon herself and children, but the application, which may be made in her behalf by any person, must be made in her lifetime and before reduction of her property to possession by the husband. (*Post, p. 744.*)

Cases cited: Phillips *v.* Hassel, 10 Hum., 197; Pillow *v.* Thomas, 1 Bax., 122; Dearin *v.* Fitzpatrick, Meigs, 559; McCaleb *v.* Crichfield, 5 Heis., 288; Murphy *v.* Green, 2 Bax., 403.

8. SAME. *Same.*

The amount which a court of equity will set apart for the benefit of a wife and her children out of her estate before its reduction to possession by the husband, will be limited over to her husband upon the contingency of her death without issue. (*Post, pp. 744–747.*)

9. LACHES. *Rule.*

In order that laches, inferable from long delay and its natural consequences of loss of evidence, etc., shall be effectual to defeat a suit, the circumstances must be such as to afford a reasonable presumption of the satisfaction or abandonment of the claim sued on. (*Post, pp. 741, 742.*)

Cases cited: Bolton *v.* Dickens, 4 Lea, 577; Parker *v.* Bethel Hotel Co., 96 Tenn., 252; Lafferty v. Turley, 3 Sneed, 157; Hammond v. Hopkins, 3 Yer., 525; Coldwell *v.* Palmer, 6 Lea, 658.

10. ABANDONMENT. *What constitutes.*

To constitute an abandonment, or waiver, there must be a clear, unequivocal, and decisive act of the party showing a determination not to have the benefit in question, with a full knowledge of his rights in the premises. (*Post, p. 742.*)

Cases cited: Gentry *v.* Gentry, 1 Sneed, 87; Traynor *v.* Johnson, 1 Head, 52; Masson *v.* Anderson, 3 Bax., 290.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

J. C. BRADFORD and A. W. STOCKELL for Prewitt.

VERTREES & VERTREES and E. H. EAST for Bunch.

McFARLAND, Sp. J. The original bill in this case was filed on the twenty-fourth of August, 1886, by Austin L. Prewitt and his wife, Amanda S., against W. H. Bunch, her guardian, for an accounting by

him as guardian and decree for a large amount alleged to be due his ward, Amanda S. Pending this litigation, there was a compromise settlement made in 1887, by which the guardian conveyed to Mrs. Amanda S. Prewitt certain real estate in Nashville by deed duly registered. The conveyance was to the wife's sole and separate use. The title to the real estate continued in the wife until her death, which occurred in June, 1895. She died without issue, but leaving a will by which she devised all her estate to her half-brothers and sisters. She had other property besides this she held under this conveyance from Bunch. Soon after the death of the wife Mr. Bunch qualified as her administrator.

In July, 1895, complainant, A. L. Prewitt, the husband, by leave of Court, filed an original bill in the nature of a supplemental bill, and bill of revivor to the original bill filed against W. H. Bunch in 1886. The complainant sought, in this bill, to have decided his rights as husband in the real estate conveyed by Bunch to Mrs. Prewitt. This cause was heard by the Chancellor and the bill was dismissed by him, from which Prewitt appealed, and the Court of Chancery Appeals affirmed the Chancellor's holding. Judge Neil, however, dissented.

This cause was heard by this Court upon full argument at the December term, 1898, but no conclusion was reached by the Court, and it was remanded to the docket for argument at the present term, and has been again most ably presented by

eminent counsel on both sides with elaborate printed briefs.

A more detailed statement of · facts is found in the opinion and findings of the Court of Chancery Appeals. Says the Court: "Before coming to and deciding what we deem the vital and controlling question in the case, we think it proper to state, in a brief manner, the controlling facts appearing in the record leading up to the compromise decree of November 20, 1887. Many years ago a Mr. McKissick died in Maury County intestate, possessed of a large estate, consisting of both realty and personalty, and leaving his wife and an infant daughter surviving him. A few years after his death his wife married Dr. W. H. Bunch, and, soon after the marriage, he became the guardian of his stepdaughter, known in the record as Susie McKissick. During her minority Susie McKissick married the complainant, who was then a young lawyer at the Columbia bar. Soon after the marriage they filed a bill in the Chancery Court at Nashville against Bunch, as her guardian, and his wife, and his surety on his guardian bond, for the purpose of making Bunch account for her estate that went into his hands as guardian, alleging that he had abused his trust; that he had made false settlements as her guardian; that he had squandered her estate; that he had overcharged her for board and as compensation in his settlements; that he had invested largely of her means in real estate, the title to which had

been taken to his wife, and other perversions of his trust. A writ of attachment issued under the bill, and was levied upon the real estate in which it was alleged the means of the ward had been invested, and an injunction, also, issued to enjoin the guardian and his wife from disposing of the property. Messrs. East & Fogg, as solicitors, filed this bill for the husband and wife. Bunch and wife, and the other defendants to the bill, answered; but it is needless to state the contents of their answer, further than to say that Bunch denied he had acted in bad faith, or dishonestly or negligently, in. the administration of his trust as guardian.

"After considerable proof had been taken in the case, negotiations began, looking to an adjustment of the claim against the guardian, and the husband participated in these first negotiations; for it appears that he prepared deeds, to be signed by Bunch and wife, to several pieces of real estate, conveying them to his wife, to her sole and separate use. These negotiations fell through, and about this time, or just before, it appears that an estrangement took place between the husband and wife, resulting in their temporary separation; and about this time, or just before, he quit the practice of law, and went into the insurance business, and soon thereafter became a minister of the gospel, connecting himself with the ministry of the Methodist Episcopal Church, South. Soon after the negotiations fell through, the wife of complainant arrived at age, when, through

her counsel, Judge East, negotiations led to the set-
tlement with the guardian embodied in the compro-
mise decree of November 20, 1897. It appears that,
at the time of the settlement embodied in the deed
from Bunch and wife to Mrs. Prewitt, and set out
in the said decree, was entered into, Mrs. Prewitt
and her husband were in a condition of estrangement
and were not living together. Judge East, it ap-
pears, in view of this status, notified Mr. Prewitt
that affairs had reached a stage where he could not
represent both him and his wife, and suggested that
he get him a lawyer to represent his interests, and
thereupon complainant engaged Mr. Figures, of Co-
lumbia. The decree recites his appearance in the
case, and his objection to the deed that had been
prepared and registered as evidence of the settlement
of Bunch's guardianship.

" We do not deem it at all essential to the de-
cision of this case to go into any discussion of the
evidence of what was said and done when Mr. Fig-
ures appeared in the case, aside from what appears
in the decree, further than to say that it is man-
ifest from the evidence, as well as the decree itself,
that Mr. Figures, representing the husband, tried to
get the decree so worded and shaped as to get all
he could for his client, and that the counsel for the
wife tried to give as little standing ground as pos-
sible, all parties agreeing, however, that an accept-
ance of the land was the proper thing to do, under

the circumstances, in satisfaction of the demands against the guardian."

This decree of November 20, 1887, after setting out the deed of Bunch to Mrs. Prewitt, proceeds as follows: "The Court, being informed in open Court by complainant, A. L. Prewitt, through his solicitor, that said Prewitt objects to said deed, but is willing that said property should be taken in full settlement of all claims against said Bunch and his sureties for the amount due from them, or either of them, as such guardian and sureties, and it further appearing to the Court that said deed was registered before the same had been acted upon by the Court, and prematurely, and it is agreed that it shall have the effect and operation of a full settlement of all matters arising out of the guardianship, as between complainants and defendants, but that it, and nothing therein, shall have the effect to exclude the marital rights of said Prewitt, as husband, or in any manner affect the same, but that the property therein specified shall stand open to the determination hereafter to be had between complainants, in such manner as they may see fit to raise the same, as to whether he has any marital rights therein, and the right of the Court to determine her equity as respects said property, it being admitted that the cause of action was through her and by virtue of her rights against said guardian and his sureties. It is definitely agreed and understood between all parties that the effect of this decree shall be to preserve

the legal and equitable rights of complainants, as between them, as respects said land, and especially to discharge said Bunch and his sureties. And it is especially agreed by the parties and decreed by the Court that Messrs. East & Fogg, solicitors for complainants, shall have a lien upon the lands and recovery, whether it be real or personal property, for a reasonable fee. It is further ordered that the Clerk and Master retain the costs of this cause out of any money in his hands as receiver of said lands, and accruing from the rental thereof, and that this cause stand upon the docket for further action of either party complainants, as respects their alleged rights as between themselves."

The Court of Chancery Appeals says, further, in its opinion and as part of its findings: "Beyond dispute, land was taken in satisfaction of the debt due from the guardian to the wife, in the joint suit ·of the husband and wife against the guardian and his sureties, and it was deeded to the wife, with the husband's assent. He left her in possession of it, and the management of it and the control of its uses to her, until her death, more than seven years after the decree. He did not take actual possession of the property, nor did he pretend to hold it in his own right alone. Manifestly, he intended, for his acts as well as his declarations so declare, that the property, in the shape it was, should remain in the wife."

Upon petition asking for rehearing of the facts

found, the Court says, as to who controlled the real estate after the decree of 1887: "We think the clear weight of proof shows that Mrs. Prewitt managed and controlled this property after the decree in 1887. The husband states that he was willing for it to remain, as the decree fixed it, as an investment. While he, in some instances, may have received some of the rents of the property, the proof, we think, clearly shows that Mrs. Prewitt controlled the property and made all contracts, or all the contracts material to its management and preservation."

There were other matters in the record as to the marital relations of Mr. and Mrs. Prewitt, and the influence of her family upon her with respect to her conduct to her husband, and as controlling her as to the execution of her will excluding her husband; and the Court of Chancery Appeals found the facts bearing upon this relation of husband and wife, "not," they say, "because we think they have any legal bearing upon the settlement of the real questions in the case, but because they are in the record," etc. We concur they have no real bearing upon the substantial questions in the case, and omit these facts and findings from this opinion.

The real question in this case is, what was the legal effect of the deed by Bunch, the guardian, to his ward, Mrs. Prewitt, in 1887, and the decree entered on the twentieth of November, 1887, upon the marital rights of the husband to the funds in the hands of the guardian, Bunch? And what ef-

fect the acts of the husband, as found by the Chancery Court of Appeals, in permitting this real estate to be taken in the name of his wife, and then so to remain under her control for over seven years, had upon his marital rights?

The contention of complainant, as found in the pleadings and condensed in his assignment of errors, is that the conveyance of the land by Bunch to Mrs. Prewitt, and decree of November 20, 1887, was intended as a mere settlement of the controversy between the guardian and ward; that they did not convert this personalty to realty, and that the same right possessed by him in the personal estate of his wife, in the hands of her guardian or in a suit or action brought by him, extended to and inhered in the land conveyed.

The contention of defendant is that the husband agreed that land should be taken for the debt, and this worked a conversion of this personalty into realty, which, upon her death, went, under her will, to her devisees, and, dying without issue, the husband took no interest in the land; that the reservations made in the decree in favor of the husband, were reservations of his marital rights in land— quasi land—and in exclusion of the idea of any question of its being personalty; that, by his laches in not asserting his rights during the life of the wife, he lost whatever right he had; and that, even if the decree did stamp the property as personalty, the complainant should have asserted his rights to it,

as personalty, before its descent as land, and that the complainant should be repelled, because, had he asserted his rights in this property during the life of the wife, her equity to a settlement to the extent of the whole property would have been decreed; and in this connection it is contended that, by the admissions of his bill, this equity was preserved.

In determining these questions thus presented, we concur with the Court of Chancery Appeals, that some of the principles involved are too well settled to need an elaborate citation of authorities, but it is well to refer to some of these principles. One is, that, at common law, upon the marriage, the husband becomes entitled, at once, to all the personal property of the wife in her possession. 2 Kent Com., 143. It is equally well settled that the husband may reduce the wife's choses in action to possession during coverture, and thus make them his absolute property. So it is settled that upon the marriage of Miss Susie McKissick and the complainant, the guardianship of Bunch for the former at once ceased, and, upon the marriage, the husband becomes clothed with the right to demand and sue for the distributive share of his wife in her father's estate, or for any funds in the hands of her guardian. *Lane* v. *Farmer*, 11 Lea, 568, and authorities cited.

Personal property in possession, and the possession of the wife in such cases is the possession of the husband, is, in law, the property of the husband, nothing else appearing to show a separate

property of the wife. *Wade* v. *Cantrell*, 1 Head, 345; *Hollingsworth* v. *Mith*, 5 Sneed, 472; *Cox* v. *Scott*, 9 Bax., 305.

The general principle of the common law is that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time, or which comes to her during coverture. *Wade* v. *Cantrell*, 1 Head, 345; *Allen* v. *Walt*, 9 Heis., 242; *Joiner* v. *Frank-lin*, 12 Lea, 422; *Handwerker* v. *Diermeyer*, 96 Tenn., 619, 627.

The common law rule that the husband in entitled to receive and reduce to possession, during coverture, all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage, or accruing afterwards, prevails in Tennessee. *Rice* v. *Reynolds*, 8 Lea, 36, 37.

Where money of the wife is in the hands of her guardian, the latter may settle with the husband and pay him the money due. *Sanders* v. *Forgasson*, 3 Bax., 249; *Lane* v. *Farmer*, 11 Lea, 568, 572.

The fact that the wife is a minor at the time of marriage makes no difference, for, upon marriage of a female ward, guardianship ceases. *Jones* v. *Ward*, 10 Yer., 168.

From that time the husband becomes clothed with the right to demand, receive, and sue for the distributive share of his wife in her father's estate, or for any funds in the hands of the guardian. The

guardian might settle with him and pay him the money due the wife. *Lane* v. *Farmer*, 11 Lea, 568, 572.

It is also well settled that if, for any reason short of abandonment of these fixed and vested rights by the husband, the wife dies before reduction to possession, the choses in action go to the husband, and whether this be as next of kin or *jure mariti* is immaterial. Williams on Exec., 242; 2 Kent Com., 137; *Hamrice* v. *Laird*, 10 Yer., 222; *Tune* v. *Cooper*, 4 Sneed, 296.

This last is an important principle as applicable to this case. This relieves of the consideration of the question of whether or not the act of the husband in suing, though jointly with his wife, for the choses in action, and actually receiving the fund, though in the shape of realty, was not, in legal effect, a reduction to possession, for, if it went to the husband *jure mariti*, upon the death of the wife, though not reduced to possession, the same result follows.

Recurring, then, to the main question, as to the intention and legal effect of the deed by Bunch to Mrs. Prewitt, and decree of November 20, 1887, we are of opinion, from the plain reading of the decree itself, and the facts as found by Chancery Court of Appeals, that the intention and legal effect of this decree was, as between the husband and wife, to leave this claim just as it was before the execution of the deed, and that the taking of the land

was merely a settlement with the guardian. This is arrived at by construing this decree by the ordinary rules of construction, as applicable to every decree or contract, by considering the surroundings of the parties at the time; by construing the instrument as a whole; and, particularly, by taking the plain and unambiguous language of the instrument itself. The purpose of the pleadings and decree was the collection of the fund in the hands of the guardian. The husband and wife were suing jointly for this alone. There was no question between the husband and wife—no litigation or issue between them. The deed to the land was taken and recorded in the absence of the husband. He objected to it at once. There is no finding that he objected to it solely because it was to the sole and separate use of the wife, but the finding is that he objected to it in its entirety, and the inference is fair that he objected to it as much because it did not in terms provide for the preservation of his rights to this property as personalty, as well as the presence or absence of any other terms affecting his rights. The decree itself shows Prewitt "objected to said deed," not to the portions alone which conveyed to her sole and separate use, but to the deed in its entirety.

Taking the decree as a whole, its evident purpose was to preserve all his rights to this property, as between husband and wife, just as it stood before the deed. Looking to the plain and unambiguous terms of the decree itself, the intent to pre-

serve all the rights of the husband seems to be clearly provided for. The language is, "that its [the deed] terms, and nothing therein, shall have the effect to exclude the marital rights of said Prewitt as husband, or in any manner affect the same." This language is as broad and comprehensive as could have been used by Prewitt's solicitor to preserve "all" his rights. An attempt to have specified what particular rights were preserved would have limited his rights, perhaps, to those specially enumerated, under the well-known rule of "*expressio unius est exclusio alterius.*"

The finding of the Court of Chancery Appeals is that the solicitor, "Mr. Figures, representing the husband, tried to get the decree so worded and shaped as to get all he could for his client." That the possible legal effect of this deed and decree was in the minds of respective solicitors, we find that the attorney's lien for fees was preserved whether the property "be real or personal property." This demonstrates that the parties to the decree had not admitted it to be land, nor the Court so declared.

The following clause in the decree is relied upon by learned counsel for defendant: "It is definitely understood and agreed between all parties that the effect of this decree shall be to preserve the legal and equitable rights of complainants, as between them, as respects said land, and especially to discharge said Bunch and his sureties." It is contended, with

much iteration and ingenuity, that the use of the term "as respects said land" is, in effect, an admission that the conversion was complete, and that the husband would henceforth treat this as land. This construction is, in our opinion, too narrow. The consequences are too extended and momentous to be warranted by this simple designation of the property in controversy as land.    It is to limit a plain reservation, in a previous clause, of all his marital rights, which he then had, to only such as he would have in land.    There was too great a distinction between all his marital rights and only such as might be claimed in land.    In one he would have the whole estate, subject only to such equity as might be set apart to the wife for life; in the other only a life estate to himself, and contingent then to loss of whole if she died without issue.

We are of opinion that this expression, "as respects said land," was a mere designation by its proper name—"land"—of what the property then was, and was not intended as determining between the parties the legal effect of its being land.    Our conclusion is, that it was not the intention of the parties, nor the legal effect of this transaction, to convert this money into land, but that it remained, after this deed and decree, a mere chose in action, as between the husband and wife.

If our conclusions as to the intention of the decree be correct, in holding that the parties, by this decree, preserved the personal character of this prop-

erty, then it is useless to discuss the abstract question of conversion, or what would have been the effect as to conversion by operation of the deed itself in the absence of decree; for, if the parties did not intend there should be a conversion, then, of course, there was none. In fact, learned counsel for defendant admits that this doctrine of conversion has no application in this case.

The next contention of the defendant is, that even though it was, as between the husband and wife, a chose in action, he lost his rights by laches, both upon the general principles applicable to the doctrine of laches and because there had been a final descent of the land before action begun. We have considered the authorities on the doctrine of laches submitted by learned counsel. The application of the doctrine of laches is for certain important reasons. This Court, in the case of *Bolton* v. *Dickens*, 4 Lea, 577, says: "The reasons upon which Courts refuse relief because of the lapse of time, are, in part, that the loss of papers, death of parties and witnesses, and the failure of memory, involve the transaction in so much obscurity and uncertainty that any attempted settlement will fall far short of reaching the truth, and may do injustice."

In *Mackall* v. *Casilear*, 137 U. S., 556, the Court says: "Where the difficulty of doing entire justice, by reason of the death of the principal witness or witnesses or from the original transaction having been obscured by time, is attributable to gross neg-

ligence or deliberate delay, a Court of Equity will not aid a party whose application is thus destitute of conscience, good faith, and reasonable diligence." Citing a number of cases.

Mr. Pomeroy says the doctrine applies to cases against conscience or public convenience, and where the party has slept upon his rights for a great length of time. Conscience, good faith, and reasonable diligence are the requisites. Pom. Eq., 419, and cases. "Laches cannot be invoked against a party unless conditions have changed, and some innocent party, without knowledge of his rights, has become involved in the matter, and is about to suffer loss by reason of his neglect." See *Parker* v. *Bethel Hotel Co.*, 12 Pick., 252.

The present case is not a controversy with innocent holders for value. This makes a great difference. Defendants occupy the same position with reference to this question that the wife herself would occupy were she living and the controversy with her. They are in law but volunteers. In equity lapse of time is not a bar to relief if a party can show good reason for not having acted. There it is only used as a witness to disprove the claim, and, even after twenty years, the Courts will sustain a just claim, if the delay is reasonably explained, to negative its influence as a witness. See *Lafferty* v. *Turley*, 3 Sneed, 157; *Hammond* v. *Hopkins*, 3 Yer., 225; *Bolton* v. *Dickson*, 4 Lea, 569; *Caldwell* v. *Palmer*, 6 Lea, 658.

In *Parker* v. *Bethel Hotel Co.*, 12 Pick., 252, this Court quotes with approval the case of *Tazewell* v. *Sanders*, 13 Wall., 354, holding that "laches must be such as to afford a reasonable presumption of the satisfaction or abandonment of the claim." This, in our opinion, is the true foundation of the doctrine of laches—a presumption that arises through lapse of time or conduct of parties that the claim has been satisfied or abandoned. There is no question in this case that the husband's rights to this property *jure mariti* were never satisfied, and the crucial test and pivotal inquiry in this case is narrowed to the question of abandonment. The elements necessary to constitute an abandonment have long since been determined by this Court. To constitute an abandonment or waiver, there must be a clear, unequivocal, and decisive act of the party, showing a determination not to have the benefit in question, with a full knowledge of his rights in the premises. *Gentry* v. *Gentry*, 1 Sneed, 87; *Traynor* v. *Johnson*, 1 Head, 52; *Masson* v. *Anderson*, 3 Bax., 290; Schouler's Dom. Rel., Sec. 189.

We are of opinion that this complainant is not repelled by the application of any of these principles. His claim to the property was not against conscience. It was a right given him *jure mariti*. The facts upon which he makes his claim, or upon which the claim could be defeated, have not been lost by death of witnesses or great lapse of time. They are principally matters of record. His reasons

for not suing earlier are not only satisfactory but commendable. Such a suit, during the strained relations between this husband and wife, would have resulted in intensifying estrangement, permanent separation, and probable divorce. His wife was enjoying the rents of the land, and a Court of Equity, looking to the preservation of harmony between husband and wife, should approve rather that condemn. The facts found do not, in our opinion, constitute an abandonment. It might be further argued that the decree itself postpones, to an indefinite future, the adjustment of the rights of both husband and wife. They mutually postponed, he the assertion of his right of reduction to possession, she her right to an equitable settlement.

The contention of the defendants that the death of the wife and casting descent to the land bars recovery, is not supported by any authority cited or based upon any principle other than doctrine of laches. *Dyer* v. *Cornell*, 4 Bax., 359, is quoted as sustaining this proposition. That was case of sale of infant's land and conversion into money for maintenance of infant. She married and then died. Held, that money went to the husband as personalty. The Court said *arguendo:* "Even if it had remained realty, for how many generations or descents shall it wear that complexion? We think only to the first generation." Quoting *Hogel* v. *Hart*, 2 Bax., 473, which was a case determined entirely upon statute, as to property of lunatics. We do not think these

cases cited by counsel and the Court of Chancery Appeals sustain this proposition.

The only remaining question for determination is the contention of the defendant that complainant should be repelled because, had he asserted his rights during the life of the wife, her equity would have been settled upon her to the extent of the whole estate. Our conclusion is that this proposition may be conceded, but that the logical and legal effect of this concession does not now bar the husband's recovery. It is true that in making this settlement, the whole of the estate may be settled upon the wife and children, and it is immaterial by whom the application is made. *Phillips* v. *Hassel*, 10 Hum., 197; *Pillow* v. *Thomas*, 1 Bax., 122; *Murphy* v. *Green*, 2 Bax., 403. But no case has gone so far as to decree the provision after the husband has reduced the property to possession. Pomeroy Eq., Sec. 1116, note; Story's Eq., Sec. 1400; 2 Kent Com., Sec. 141; *Dearin* v. *Fitzpatrick*, Meigs, 559. Nor, upon death of wife, upon application of children, as they have no independent right to enforce her equity. Pomeroy Eq., Sec. 1118, note 2; *Lloyd* v. *Williams*, 1 Madd., 450; *De La Garde* v. *Lempriere*, 6 Beav., 344; *Hodgins* v. *Hodgins*, 4 Cl. & Fin., 323; *McCaleb* v. *Critchfield*, 5 Heis., 288.

But the main and controlling reason why this contention of defendant would not bar the husband's present recovery is, that had this equity been set aside, it would only have been for life of wife, with

remainder to husband, she leaving no issue. This is the settled rule. The English decisions are in accord that the settlement on the wife is always coupled with a limitation over to the husband, if she dies before him without leaving issue. This was the rule laid down by Lord Cranworth in *Carter* v. *Taggart*, 1 D. M. & G., 386, and in *Word* v. *Yates*, 1 Drewry & Small, 80, 84. Since then the question has been many times considered by the English Courts.

In *Spirett* v. *Willows*, L. R., 1 Chan. App., 520, Lord Chelmsford said: "There are numerous authorities on the subject, and the principle which I abstract from them all is this, that where a wife is declared to be entitled to a settlement, and the fund is settled under the direction of the Court, the ultimate limitation of the money, even in the event of her surviving her husband, will, in the absence of special circumstances, be to him. And this seems reasonable, because the fund belongs originally to him, and the Court will not deprive him of it, without doing that which is equitable, after providing for the wife and children."

*In re* Suggett's Trusts, L. R., 3 Chan. App., 215, was a case in which, on account of the husband's cruel conduct and intemperance, the whole of the wife's estate was settled on her, but with the usual limitation over for the husband. In the course of his judgment, Cairns, L. J., observed: "With respect to the form of the settlement, the principle

on which the Court acts is to let in the equity of the wife and children, and to that extent to exclude the husband's marital right. But, as soon as the equity is satisfied, the provisions of the settlement ought to end, and the marital right ought to return."

In the case of *Spirrett* v. *Willows*, L. R., 4 Chan. App., 407, the settlement was to the wife and children, with limitation over to assignee of the husband, who was a bankrupt; and *Walsh* v. *Watson*, L. R., 8 Chan. App., 482, by Lord Selbourne, is in accord with these cases, and limitation was over to the husband whether he survived or not.

In the case of *Croxton* v. *May*, L. R., 9 Eq., 404, all the important cases on the subject were reviewed, and the result was stated in these words: "The principle upon which this Court ought to proceed is, that you ought not to interfere with the marital right more than is necessary to give effect to the equity of the wife and children—that is to say, the right of the wife and children to have a provision out of the fund. The marital right ought not to be interfered with more than is necessary for that purpose. The logical and proper result of that principle is that the husband is to have the ultimate reversion, subject to the provision for the wife and her children." There the whole fund was given to the wife. *Murry* v. *Lord Elibank*, 1 Lead. Cas. in Eq., 629.

Says Mr. Pomeroy (Sec. 1118): "The latest decisions have settled the rule that the husband's mar-

ital rights should not be interfered with any further than is necessary to protect the wife's equity for herself and her children."

Lewin on Trusts (Sec. 743): "The wife's equity to a settlement does not depend upon her right of property in the subject-matter, for it must be enforced for the benefit of herself and children, and the amount is wholly discretionary with the Court. It is an obligation which the Court fastens not upon the property, but upon the right to receive it." Pomeroy Eq., Sec. 1114.

The result of the application of these principles to this case is (by giving this property to the husband now, upon the death of the wife without issue), to do what would have resulted had the husband filed bill during life of wife, and wife claimed settlement. Let decree be entered accordingly, reversing decree of the Court of Chancery Appeals, and for the complainant for the recovery of the property in controversy.

SNODGRASS, Chief Justice, and HU L. McCLUNG, Special Judge, dissent.