A. J. WILLIFORD, Admr., etc., *v.* J. J. PHELAN *et al.*

(*Jackson.*  April Term, 1908.)

1.  **WILLS.** At common law a married woman could will personalty with assent of husband.

Under the common law a married woman could make a will of her personal property not yet reduced to the husband's possession, with the husband's assent to the particular will. (*Post, pp.* 594, 595.)

Case cited and approved: Perry v. Gill, 2 Humph., 218.

2.  **SAME.** At common law a married woman could will her separate personalty without husband's assent.

Independently of the assent of her husband, a married woman could, under the common law, dispose of her separate personal property. '(*Post, p.* 595.)

Case cited and approved: Perry v: Gill, 2 Humph., 218.

3.  **SAME.** Power of married woman to make wills is not enlarged by statute as to personalty, but as to realty.

The statute (Acts 1869-70, ch. 99, compiled in Shannon's Code, secs. 4242-4247), regulating and enlarging the power of married women to dispose of their property by will, deed, etc., applies exclusively to their power to dispose of their real estate, and does not enlarge their power to dispose of their personal property by will. (*Post, pp.* 595, 596.)

Code cited and construed: Secs. 4242-4247 (S.); secs. 3346-3351 (M. & V.); secs. 2486a-2486f (T. & S.).

Acts cited and construed: Acts 1869-70, ch. 99.

4.  **SAME.** Marriage at common law gave wife's personal goods to husband.

Marriage at common law amounted to an absolute gift to the husband of all personal goods of which the wife was actually

Williford v. Phelan.

or beneficially possessed at the time, or which comes to her during coverture. (*Post, p.* 596.)

Cases cited and approved: Wade v. Cantrell, 1 Head, 345; Allen v. Walt, 9 Heisk., 242; Joiner v. Franklin, 12 Lea, 422; Handwerker v. Diermeyer, 96 Tenn., 619; Prewitt v. Bunch, 101 Tenn., 735.

5. **HUSBAND AND WIFE.** Husband's right to reduce to possession the wife's personalty, and choses in action.

The common law rule that the husband is entitled to receive and reduce to possession during coverture all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage or accruing afterwards, prevails in Tennessee. (*Post, p.* 596.)

Cases cited and approved: Rice v. McReynolds, 8 Lea, 36; Prewitt v. Bunch, 101 Tenn., 735.

6. **SAME.** Wife's possession of personalty is that of the husband, and such property is his, when.

The wife's possession of personalty is the husband's possession, and such property is in law the property of the husband, nothing appearing to show it to be the separate property of the wife. (*Post, p.* 596.)

Cases cited and approved: Hollingsworth v. Miller, 5 Sneed, 472; Wade v. Cantrell, 1 Head, 345; Cox v. Scott, 9 Bax., 305; Prewitt v. Bunch, 101 Tenn., 735.

7. **SAME.** Wife's right to separate estate.

The wife may hold a separate estate free from the debts, contracts, and control of her husband, with the power of disposition by will or otherwise. (*Post, p.* 597.)

8. **SAME.** Creation of a separate estate by gift from strangers or from the husband.

A separate estate in personal property may be created, not only by writing, but by parol gift. When the gift is from a stranger, the intention to create the separate estate must usually appear from the express language of the donor; but, where a gift of

Williford v. Phelan.

personal property is made by the husband directly to the wife during coverture, the intention to exclude his own rights is inferred from the relation of the parties without the use of the express words that would be required where a third person is the donor.  (*Post, p.* 597.)

9. SAME. Husband's turning over salary to wife for custody does not create a separate estate in her, when.

Where the husband gave his salary to his wife as the same was paid to him which she deposited in a bank in her own name, on the ground of his belief that she would outlive him, and that she would take care of it for him, there was no such absolute gift of the money to the wife as would create a separate estate in her that she might dispose of by will. (*Post, pp.* 596-601.)

Case cited and approved:   Wood v. Polk, 12 Heisk., 222.

10. SAME. Husband's release to wife of all interest in her land creates a separate estate in rents and damages arising therefrom.

Where a husband by deed released and quitclaimed to his wife all his right, title, and interest then existing in her real estate held by her as a general estate, and all interest he might thereafter acquire as tenant by the curtesy, he surrendered all claim to the rents and damages arising therefrom and collected by her which thus became her separate estate. (*Post, pp.* 599-602.)

11. SAME. Probate of wife's will is not conclusive in a collateral proceeding as to her right to dispose of her choses in action.

Where a husband, with knowledge of an existing will of his deceased wife, qualified as administrator of her estate, and reduced to possession and collected her choses in action, a deposit in bank in her name, he was not concluded by the subsequent probate of the will to challenge her right, in a proceeding by her administrator with the will annexed against him to recover the sum so appropriated, to dispose of such personal property on the theory that it belonged to him by the marital right, or to defeat his right to administer on her estate and to reduce to possession her choses in action. (*Post, pp.* 602-605.)

Case cited and distinguished:   Williams, Ex parte, 1 Lea, 530.

12. **SAME.** Same. Husband may ignore wife's will as to personalty, and administer on her estate.

Where a wife attempted by will to dispose of her choses in action which were not distinctly impressed with the character of a separate estate, her husband is entitled to ignore the will and to qualify as her administrator, and to reduce to possession any such choses in action of which she died possessed. (*Post, pp.* 604, 605.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals.—F. H. HEISKELL, Chancellor.

LEE THORNTON, for complainant.

CANADA & PHELAN and MCFARLAND & CANADA, for defendants.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainant, as administrator with the will annexed of Mrs. Elizabeth Phelan, deceased, filed this bill to recover of J. J. Phelan, surviving husband and the original administrator of the said Elizabeth, the sum of $1,026 alleged to have been unlawfully appropriated by him. Mrs. Elizabeth Phelan died in the city of Memphis on June 19, 1905, leaving surviving her, her husband, J. J. Phelan, and their infant child Angela, born October 19, 1903. Shortly after the death of said Eliz-

abeth, her husband, J. J. Phelan, qualified as her administrator and collected from the Union & Planters' Bank two certificates of deposit in the name of his wife, aggregating the sum of $1,189.37. There were no creditors of the estate, excepting the amount due for funeral and administration expenses, amounting to $162.75, and, after the payment of these sums, the administrator receipted for the balance, to wit, $1,026.82, as distributee and husband of the decedent. The present administrator with the will annexed has brought this suit to recover of the said J. J. Phelan this sum of $1,026.82, and as a basis of recovery exhibits a will made and executed by the said Elizabeth in Hamilton, Ontario, Canada, on August 1, 1901, wherein she bequeathed and devised all of her estate equally to her husband, her father, her two brothers, and her sister. The estate of the testatrix consisted of the bank deposit already mentioned, and certain real estate situated in Hamilton, Canada, and in Shelby county, Tennessee. The infant daughter, Angela, was not born until about fourteen months after the execution of the will, and, of course, was not mentioned therein. The theory of the present bill is that the bank deposit appropriated by the husband as administrator did not belong to him, but passed to the legatees mentioned in the will of the said Elizabeth Phelan. The defendant, J. J. Phelan, answered the bill, admitting that he had reduced to possession the bank deposit mentioned, claiming that he was entitled to this fund, first,

because it represented his earnings whereof he had constituted his wife the mere custodian; and, second, because as surviving husband it was his right to reduce to possession and retain all choses in action of his deceased wife.

On the hearing the chancellor was of opinion that the defendant Jos. J. Phelan was only entitled to one-fifth of the bank deposit collected by him and that the balance thereof belonged to the other legatees mentioned in the will of Elizabeth Phelan. The chancellor accordingly pronounced the decree against the defendant J. J. Phelan and the National Surety Company, his bondsmen, for the sum of $918.52, and the costs of the cause. On appeal the decree of the chancellor was affirmed by the court of civil appeals, and the cause is here on a writ of *certiorari* granted by this court at a former day of the term. The defendant Jos. J. Phelan has assigned as error the decree of the court of civil appeals.

It is contended on behalf of the said J. J. Phelan that the will of his wife in which she undertook to dispose of this personal property was void for the reason that it was not her separate estate, but belonged to the defendant as husband *jure mariti*. In the case of *Perry et al.* v. *Gill,* 2 Humph., 218, the rule of common law in respect of the right of a married woman to make a will was stated as follows:

"(1) She can make a will of property which is hers, not yet reduced into the husband's possession; but this with the assent of the husband, not in general, but to the

particular will, and in such case the assent avails nothing unless he survive, it being but his waiver of his right of being her administrator.

"(2) Independently of the assent of her husband, a wife has power of disposition by will of her separate property."

It has been supposed that the power of a married woman to execute a will of her personal property has been enlarged by Acts 1869-70, p. 113, c. 99 (Shannon's Code, sections 4242-4247), but this is a mistaken idea. An attentive examination of this act will show that it was intended to deal exclusively with the power of the married woman in the disposition of her real estate by will, deed, etc.

In Pritchard on Wills, sections 83-84, the law on this subject is well stated:

"The uniform rule in this State has been to deny to married women testamentary capacity except in certain cases and to enforce the rules of the common law except so far as they have been modified or abrogated by statute. To the wife's testamentary incapacity there were certain exceptions, principally applicable to personal property, which were recognized in England, and which are still recognized in this State, and the rules of common law with respect to real property have been so much modified by statute in this State that coverture has almost ceased to be a disability to making a will of that class of property. Our statutes have been principally directed to conferring on married women powers

of disposition of their real estate, and to the enlargement of those powers from time to time, leaving the rules governing their power over personal property undisturbed."

The next inquiry that arises is in respect of the legal *status* of this bank deposit—whether it was the separate estate of the wife, or whether it was such personal property as belonged to the husband *jure mariti*. The general principle of the common law is that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time, or which comes to her during coverture. *Prewitt* v. *Bunch,* 101 Tenn., 735, 50 S. W., 748; *Wade* v. *Cantrell,* 1 Head, 345; *Allen* v. *Walt,* 9 Heisk., 242; *Joiner* v. *Franklin,* 12 Lea, 422; *Handwerker* v. *Diermeyer,* 96 Tenn., 619, 36 S. W., 869.

The common-law rule that the husband is entitled to receive and reduce to possession during coverture all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage or accruing afterwards, prevails in Tennessee. *Prewitt* v. *Bunch,* supra; *Rice* v. *McReynolds,* 8 Lea, 36.

Personal property in possession, and the possession of the wife in such cases is the possession of the husband, is in law the property of the husband, nothing else appearing to show a separate property of the wife. *Prewitt* v. *Bunch,* supra; *Wade* v. *Cantrell,* 1 Head, 345; *Hollingsworth* v. *Miller,* 5 Sneed, 472; *Cox* v. *Scott,* 9 Baxt., 305.

While these principles are well settled, the right of the wife to hold a separate estate free from the debts, contracts, and control of her husband, with the power of disposition by will or otherwise, is also well settled.

"A separate estate in personal property may be created, not only by writing, but by a parol gift. When the gift is from a stranger, the intention to create the separate estate must usually appear from the express language of the donor; but, where a gift of personal property is made by the husband directly to the wife during coverture, the intention to include his own rights is inferred from the relation of the parties without the use of the express words that would be required where a third person is the donor." Pritchard on Wills, section 86.

It remains to apply the principles of law just stated to the facts disclosed in the record. It is conceded that the defendant, J. J. Phelan, was a railroad engineer and received a salary for his services varying from $160 to $200 per month, and that during his married life he turned over to his wife his salary as it was paid him. It is contended, however, on behalf of the defendant, Phelan, that this fund was accumulated in the hands of his wife as mere custodian for the purpose of defraying household and other incidental expenses, and that the surplus belonged to him. It is the theory of the complainant that this fund was an absolute gift from the husband to the wife, and that it thereby constituted her separate estate by implication and intendment of law

without the necessity of appropriate words fixing its character at the time it was paid the wife. The proof relied on to show a gift by the husband is as follows:

The defendant, J. J. Phelan, was asked:

"Q. 21. If any, what custom did you have regarding your checks representing your monthly salary? A. Always gave them to my wife as soon as I got them.

"Q. 22. If you had any particular reason in doing this, please state exactly what the reason was? A. Because she was good and kind, and I knew she would take care of it.

"Q. 23. Did either you or she understand that you were giving her those checks for her own personal use, or merely constituting her custodian for the fund for your common benefit? A. I always placed that confidence in her that she was good and kind, and would take care of my money for me.

"Q. 24. Now, Mr. Phelan, your wife, the said Mrs. Elizabeth Phelan, deceased, recognized your right to the fund which you intrusted to her, did she not? State to what extent she recognized such right? A. Well, she always gave me whatever I asked her. When I wanted $10, $20, or $30, I always got it.

"Q. I believe you have testified that she did not say in whose name that deposit was being made? A. No, sir; I never asked her. I said: 'You always put it in your own name. I will not outlive you.' That was one time that we were talking about it. I merely passed the remark and I didn't expect to outlive her."

We find in this testimony no proof of an absolute gift of the husband's salary to the wife. It was merely his intention to constitute her the custodian of this fund because he "knew she would take care of it," or, as the witness otherwise expressed it, "would take care of my money for me." There is no other proof on this subject in the record.

It appears from the stipulation of agreed facts that:

"Mrs. Elizabeth Phelan at the time of her death was an owner of real estate near the corner of Main street and Iowa avenue in the city of Memphis. That said real estate, together with the sum of $276.18 paid to her about the 21st day of July, 1903, was left her under the will of John Mynehan, deceased, but that said property was not impressed by said will as a separate estate. It is further agreed that on or about the 14th day of November, 1904, Mrs. Elizabeth Phelan collected from the city of Memphis, as damages to her said real property on Iowa avenue occasioned by the construction of a subway, the sum of $1,200, less the sum of $300 paid as counsel fees, and that on payment of said amount she and her husband, J. J. Phelan, executed a joint receipt therefor. It is further agreed that H. H. Roynan, real estate agent, collected rent on said property for several months, paying it over to Mrs. Phelan until March 1, 1903, when she informed him that she would attend to future collections of rent. It is further agreed that the sum of $1,189.57 mentioned in the inventory filed by said J. J. Phelan, administrator, represented collections

from the Union & Planters' Bank, in which said Mrs. Elizabeth Phelan held two certificates of deposit, both payable to her order, one for $928.72, dated November 22, 1904, the other calling for $280.85, dated December 1, 1904. It is further agreed that the bank officials state they have no record showing when this money was placed in the bank and no means of knowing where it came from; that it may have been deposited there on above mentioned dates, or the certificates may have been renewals; that the books previous to these debts were placed in the vaults when the bank moved to its present location; and that to hunt them up would entail more time than the bank officials are willing to take."

It thus appears from the agreed statement that not only the salary of J. J. Phelan went into the hands of his wife, but that she also received the sum of $900 as damages to her property on Iowa avenue; that she also received the sum of $276 under the will of John Myne-han, deceased, and that she also collected and received rents upon her property in the city of Memphis; and that she also received from Canada other sums amounting to several hundred dollars. The record fails to disclose the source from which Mrs. Phelan derived the fund of $1,189 deposited to her credit in the Union & Planters' Bank at the date of her death and which is the subject of the present controversy.

In *Wood* v. *Polk*, 12 Heisk., 222, it is said: "It is a doctrine of law long recognized in this State that in a gift of property to a *feme covert*, if it be the intention

of the donor to interfere with the marital right of the husband, that intention must be expressed in the clearest and most unequivocal terms; and, if a doubt exists as to such intention, it must be resolved in favor of the marital right. This right is a favorite of the law, and the courts will protect it in all doubtful cases with the same readiness with which they will foster the independent estate of the wife when the intention to create that is clear."

It is said that the fund that went into the hands of Mrs. Elizabeth Phelan arising from rents of her real estate, the funds derived from the city in liquidation of damages inflicted upon this property, constituted her separate estate for the reason that on December 12, 1903, the said Joseph J. Phelan executed a deed to his wife in which he released all his estate, right, and interest in the real estate of his wife. As we have already seen, this real estate was devised to her by John Mynehan, ·deceased, but was not impressed as a separate estate by the terms of the will. The release of the husband recited that: "The said Joseph J. Phelan had remised, released, and forever quit-claim unto my beloved wife, Elizabeth Phelan, aforesaid, her heirs and assigns forever, all the estate, right, title, and interest, which at law or in equity I now have or may hereafter acquire as tenant by the curtesy in and to the following described tracts or parcels of land situated in the city of Memphis [describes them]."

And stated:

"That the above mentioned parcels of land, being the same owned at the time of his death by John Mynehan, deceased, late of Shelby county, Tennessee, and by him devised to the grantee herein."

It will thus be observed that the husband, Joseph J. Phelan, not only released every possible interest he may have had in said real estate, but also any interest he might thereafter acquire as tenant by the curtesy in and to this real estate. It appears from the record that the sum of $900 which went into the hands of the wife arose from the settlement of a claim for damages sustained by this real estate, and that the rents that went into Mrs. Phelan's hands were also derived from this real estate. The husband having by deed released all his right, title, and interest both in law and in equity to the real estate, it follows that he also surrendered all claim to rents and damages arising therefrom. It follows that these items constituted the separate estate of Mrs. Phelan; all interests thereto and therein having been released by the husband prior to her death.

But it is impossible to say after a thorough examination of the evidence that this bank deposit arose from the separate estate of the wife. If it be treated as personal property coming into the hands of the wife during coverture, it became the property of the husband *jure mariti;* or, if the certificates of deposit which represented this fund be treated as choses in action (as they are), the husband had a right, after the death of

his wife, to administer on her estate and reduce them to possession.   In either event the bank deposit became the property of the husband.   It is said, however, that this court must assume that this fund constituted a part, of the separate estate of the married woman, and that in the disposition of it she had a right to bequeath it by last will and testament without the consent of her husband.   This argument is based upon the fact that the will was duly probated in the county court of Shelby county, and that this probate was not only conclusive of the formal execution of the will, but likewise of the testamentary capacity of the testatrix until it might be decided otherwise on an issue of *devisavit vel non* in the circuit court.   Counsel cites the case of *Williams et al., ex parte,* 1 Lea, 530, wherein the testamentary capacity of the testatrix was attacked upon the ground of her infancy.   The court said:

"The question as to the infancy of the testatrix might undoubtedly have been made upon the offer of the will for probate in the county court, or upon contest in the circuit court, and the judgment of the court establishing the will would, if unreversed, have been conclusive whether the court in fact adjudged that she was of full age, or that an infant might devise realty.   In either case it would have been the judgment of a court of exclusive jurisdiction and in the nature of a proceeding *in rem.*   So that upon principle the probate must be as conclusive of the testamentary age of the testatrix as

it is of testamentary capacity in other respects until
set aside in the regular mode."

Mr. Pritchard in his work on Wills, section 44, says:
"The probate of a will in the county court is in the
nature of a proceeding in rem, operating on the subject-
matter and binding generally. In the absence of a
fraud and collusion, the probate is conclusive until an-
nulled, as to the capacity of the testator, the testamen-
tary character of the instrument, and its due execution,
and not even a court of chancery can inquire into these
matters, even though fraud and undue influence in
procuring the will are alleged. The only mode in which
the probate can be set aside is upon a contest success-
fully prosecuted upon an issue of *devisavit vel non* in
the circuit court."

It appears that, before the will in question was pro-
bated, the defendant, Phelan, qualified as administra-
tor of his wife, and reduced the choses in action to pos-
session. It is true, as disclosed by this record, that the
defendant Phelan was informed and knew of the ex-
istence of the will of his wife before he took out letters
of administration and appropriated the bank deposit
in question.

We are of opinion, however, that the husband is not
concluded by the probate of his wife's will to challenge
her right in this proceeding to dispose of personal prop-
erty that belonged to him *jure mariti,* or to defeat his
rights to administer on her estate and reduce to pos-
session her choses in action. This is an entirely dif-

ferent question from that decided in *Williams, ex parte,* 1 Lea, 530. While the probate of the will in that case was conclusive of the formal execution of the will and the testamentary capacity of the testatrix when questioned in a collateral proceeding, the question here presented is the right of the wife by last will and testament to dispose of the property of the husband and to defeat his right to administer on her estate. Under such circumstances the husband had a right to ignore the will, qualify as the administrator of his deceased wife, and reduce to possession any choses in action of which she might die seised and possessed, unless such property was distinctly impressed with the character of a separate estate. We have found no such separate estate in this property, and it follows that the wife had no right to dispose of it by last will and testament. We are therefore of opinion the decrees of the chancellor and of the court of civil appeals were erroneous and are reversed, and complainant's bill dismissed with costs.