J. T. BAKER *v.* MRS. R. E. DEW *et al.*

(*Knoxville.*   September Term, 1915.)

1. **DESCENT AND DISTRIBUTION.**   Wife's personalty.   Husband's rights.   Statutes.

Laws 1913, ch. 26, entitled "To Remove Disabilities of Coverture from Married Women," and providing that they are fully emancipated from all such disabilities, and that the common-law with respect thereto and its effect, on the rights of the wife is totally abrogated, that marriage shall not impose any disbility on a woman as to the ownership, acquisition, or disposition of property, and that she shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of property as if unmarried, failing expressly, or by necessary implication, to make any disposition of her property after her death, in the event of her failure to dispose of it, her personal property on her death, without such disposition, passes, *jure mariti*, to her husband, as it would had they, prior to passage of the act, made an antenuptial contract in the terms of the statute, under the law then existing.   (*Post, pp.* 128-133.)

Acts cited and construed:   Acts 1913, ch. 26.

Cases cited and approved:   Parlow v. Turner, 132 Tenn., 339; Lillienkamp v. Rippetoe, 133 Tenn., ——; Bennett *et al.* v. Hutchens *et al.*, 133 Tenn., ——; Wade v. Cantrell, 38 Tenn., 346; Hollingsworth v. Mith (Miller), 37 Tenn., 472; Cox v. Scott, 68 Tenn., 305; Allen v. Walt, 56 Tenn., 242; Joiner v. Franklin, 80 Tenn., 422; Handwerker v. Diermeyer, 96 Tenn., 619; Rice v. McReynolds, 76 Tenn., 36; Sanders v. Forgasson, 62 Tenn., 249; Lane v. Farmer, 79 Tenn., 568; Jones v. Ward, 18 Tenn., 168; Hamrico v. Laird, 18 Tenn., 222; Tune v. Cooper, 36 Tenn., 296; D'Arcy v. Mutual Life Ins. Co., 108 Tenn., 567; Shugart v. Shugart, 111 Tenn., 179; Williford v. Phelan, 120 Tenn., 589; Mitchell v. Bank, 126 Tenn., 669.

Case cited and distinguished:   Prewitt v. Bunch, 101 Tenn., 723; Brown's Adm'r v. Brown's Adm'r, 25 Tenn., 126.

Baker v. Dew.

2. **STATUTES.** Construction. Altering common-law.

A statute intended to alter the common-law will not be construed to alter it further than it expressly declares or is necessarily implied from the fact of it covering the whole subject-matter. (*Post, pp.* 133-136.)

Case cited and approved:   State v. Cooper, 120 Tenn., 549.

FROM KNOX.

Appeal from the Chancery Court of Knox County— WILL D. WRIGHT, Chancellor.

O. L. WHITE, S. R. MAPLES, CORNICK, FRANTZ & MC-CONNELL, JOUROLMON & WELCKER and GREEN, WEBB & TATE, for appellants.

JESSE L. ROGERS, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Baker married Miss Clara Dew, a daughter of Mrs. R. E. Dew. The marriage occurred on November 1, 1914, and was dissolved by the death of Clara, on March 30, 1915. The bill in this case was filed by Baker on June 16, 1915, seeking a decree against Mrs. Dew and other defendants for the sum of $1,515.40, averred to be in the hands of Mrs. Dew, as guardian of her daughter Clara. The suit is based upon the ground that the above sum of money in the hands of Mrs. Dew was, at the time of the marriage, the property of Clara, and, upon the death of Clara, became the property of

Baker *jure mariti*. Defendants interposed a demurrer, which the chancellor overruled but allowed an appeal which defendants perfected.

The question made by appellants is that the bill shows the marriage and death of Clara Baker to have occurred after chapter 26 of the Acts of 1913 went into effect, and therefore it is said the chancellor should have sustained the demurrer and dismissed the bill upon the ground that the act abrogated the marital rights of the husband in the personal property of the wife, and upon her death the above sum passed to her next of kin and heirs at law.

The substance of the title of the act of 1913 is "To Remove Disabilities of Coverture from Married Women," and the substance of the body of the act is:

That married women are fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated. Marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married. Every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, and to make any contract in reference to it, and to bind herself

personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married.

This act has been considered by us heretofore in three cases. *Parlow* v. *Turner,* 178 S. W., 766; *Sarah Lillienkamp* v. *W. T. Rippetoe,* and *J. G. Bennett et al.* v. *Jefferson Hutchens et al.* The opinions in the two cases last named were delivered at the present term. In *Parlow* v. *Turner,* supra, the wife was the owner of two tracts of land at the time of her marriage, which occurred prior to the passage of the act of 1913. She rented the land to a tenant by the month, the tenant paid the rent to her which accrued after the passage of the act, and upon the suit of the husband, seeking to compel the tenant to pay the same rent again, we held the tenant to be acquitted by the payment to the wife, and the result reached was based on the act of 1913. In *Lillienkamp* v. *Rippetoe,* supra, we held that the act did not enable a divorced woman to maintain against her former husband an action for assault and battery committed by him upon her person after the act was passed, and while they sustained towards each other the relationship of husband and wife, and in *Bennett* v. *Hutchens,* supra, we held that the act did not abrogate an estate held by the entireties created by deed to husband and wife antedating the passage of the statute.

Prior to the passage of the act of 1913 the law in this State upon the question of the husband's rights in the personal property of the wife was well settled. In

133 Tenn. 9

*Prewitt* v. *Bunch,* 101 Tenn. (17 Pick.), 723, 50 S. W., 748, it was said:

"Personal property in possession, and the possession of the wife in such cases is the possession of the husband, is, in law, the property of the husband; nothing else appearing to show a separate property of the wife. *Wade* v. *Cantrell,* 1 Head, 346; *Hollingsworth* v. *Mith* (Miller), 5 Sneed, 472; *Cox* v. *Scott* 9 Baxt., 305. The general principle of the common law is that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time, or which comes to her during coverture. *Wade* v. *Cantrell,* 1 Head, 346; *Allen* v. *Walt,* 9 Heisk., 242; *Joiner* v. *Franklin,* 12 Lea, 422; *Handwerker* v. *Diermeyer,* 96 Tenn., 619, 627, 36 S. W., 869. The common-law rule that the husband is entitled to receive and reduce to possession, during coverture, all choses in action, whether in the form of notes, debts, or legacies, belonging to the wife at the time of their marriage, or accruing afterwards, prevails in Tennessee. *Rice* v. *McReynolds,* 8 Lea, 36, 37. Where money of the wife is in the hands of her guardian, the latter may settle with the husband and pay him the money due. *Sanders* v. *Forgasson,* 3 Baxt., 249; *Lane* v. *Farmer,* 11 Lea, 568-572. The fact that the wife is a minor at the time of marriage makes no difference, for, upon marriage of a female ward, guardianship ceases. *Jones* v. *Ward,* 10 Yerg., 168. From that time the husband becomes clothed with the right to demand, receive, and sue for the distributive share

of his wife in her father's estate, or for any funds in the hands of the guardian. The guardian might settle with him and pay him the money due the wife. *Lane* v. *Farmer,* 11 Lea, 568-572. It is also well settled that if, for any reason short of abandonment of these fixed and vested rights by the husband, the wife dies before reduction to possession, the choses in action go to the husband, and whether this be as next of kin or *jure mariti* is immaterial. Williams on Exec., 242; 2 Kent Com., 137; *Hamrico* v. *Laird,* 10 Yerg., 222; *Tune* v. *Cooper,* 4 Sneed, 296.''

See, also, on the same subject, *D'Arcy* v. *Mutual Life Ins. Co.,* 108 Tenn. (24 Pick.), 567, 69 S. W., 768; *Shugart* v. *Shugart,* 111 Tenn. (3 Cates), 179-183, 76 S. W., 821, 102 Am. St. Rep., 777; *Williford* v. *Phelan,* 120 Tenn. (12 Cates), 589-596, and authorities cited; *Mitchell* v. *Bank,* 126 Tenn. (18 Cates), 669, 150 S. W., 1141.

In *Prewitt* v. *Bunch,* supra, the equity of the wife to a settlement, who died without issue (as did the wife in the present case), was held to be no bar to the suit of the husband brought after the death of the wife, and the holding in that case was mainly put on the ground that if the husband had sued during the life of the wife, and a settlement had been decreed to her, it would only have been for the life of the wife, with remainder to the husband, she leaving no issue.

In one of our cases, speaking of the marital right of the husband, it was said: .

"If there be a marriage contract whereby this right is abridged, it is taken away only to the extent stipulated in the settlement. When the settlement makes no disposition of the property, in the event of the wife's death, and provides only for her dominion over it during coverture, the right of the husband as survivor is a fixed and stable right over which the court has no control, and of which he cannot be divested."

The language of the contract in that case was:

"That the negroes and their future increase are to be and remain the property of the said Elizabeth, and subject to her control and disposal forever."

The court admitted that the words of the contract—especially in connection with the word "forever"—were appropriate to the creation of an absolute estate in the property, but held, nevertheless, that they were used to express the quantity of the estate and the character of the dominion, which the wife was empowered to exercise over the property; the word "forever" was held to be limited by the context to a control and disposal of the property during the coverture of the wife. She did not exercise the right of disposal during her life, and it was held that the husband's marital right which had been abridged by the contract during coverture attached to the property at her death. *Brown's Adm'r* v. *Brown's Adm'r,* 25 Tenn. (6 Humph.), 126, 127. On the other hand, in another case, the contracting husband had bound himself, his heirs, etc., "to relinquish, and does relinquish, all claims he has, or ever could have, to the property or money so purchased,

either in law or equity, that he might acquire by marrying or becoming the husband of the said Sarah.'' In commenting on the effect of this part of the contract, the court said:

''Language more strongly appropriate to exclude him from all title whatever to the property by virtue of his marital right to the property not only during coverture, but absolutely and forever, could not, we think, have been adopted, and we are unable to perceive anything in the balance of the instrument to limit the language to the period of coverture.''

So here the marital right of the husband was held to be extinguished by his contract. *Hamrico* v. *Laird,* 18 Tenn. (10 Yerg.), 222. The principle established by these cases and others was recognized and applied in *Mitchell* v. *Bank,* 126 Tenn. (18 Cates), 669, 672, 150 S. W.; 1141, and it was there pointed out that the creation of a separate estate in personalty, unless words were used indicating clearly an intention to cut off after coverture the husband's rights *jure mariti,* would merely have the effect to supend them during the period of coverture, and they would attach again, at the death of the wife, to the property in which her separate estate had been created.

In the light of the law, as we have reviewed it above, we must determine what change was made by the act of 1913, so far as the rights of the parties to this suit are concerned. It is significant that neither expressly nor by necessary implication does that statute undertake to make any disposition of the prop-

erty of the wife after her death in the event of her failure to exercise any of the powers conferred on her by the statute. What is the necessary result? We think there can be but one, and it is the devolution of such of her property as she had not disposed of during life, according to the rule of the common law left unchanged by the act. In other words, the property passes *jure mariti* to her husband, exactly as it would have done had the husband made an antenuptial contract in the terms of the statute prior to the passage of the act under the law as it then existed. We have seen that the effect of such a contract would have been to abridge the marital rights of the husband in the personal property of the wife during coverture, and that at her death his marital rights would again attach, and the property would pass to him thereunder; so in the present case we think it must be under the statute. It cannot be material that the wife in this case was under the age of twenty-one years, at the time of marriage and during the period thereof. The law makes no exception in such a case. In opposition to the views we have expressed, the brief for appellants insists that the act totally abrogates the common law in respect of the marital rights of the husband. But there are no words of the statute which expressly so declare, and considering it as a whole we do not think such result follows by necessary implication. We think that the words "totally abrogated," in section 1 of the act, are limited by the context in which they are used, and their effect is to manifest a legislative pur-

Baker v. Dew.

pose so as to free the wife from the disabilities which the common law imposes on her as the result of marriage that she may enjoy during coverture all rights "as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married." Construed as we have held this act should be, its provisions clearly fall short of the effect of the marriage contract in *Hamrico* v. *Laird,* supra, and in *Loftus* v. *Penn,* 31 Tenn. (1 Swan), 445. Each of those contracts was held to look to a period of time beyond the coverture, and death of the wife, and to bind the husband and his representatives to refrain from setting up claim to the property of the wife *jure mariti,* when that period of time should arrive. Manifestly, the legislature knew of the existence of the marital rights of the husband in the property of the wife when it passed the act of 1913, and, if its purpose had been not only to abridge but to totally abrogate those rights, we think that purpose would have been made to appear either by the express terms of the act, or by necessary implication, considering it as an entire piece of legislation; and, as no such purpose appears, we may well assume that the body which passed the act intended to confer on the wife the power to determine by her own acts during life and coverture whether her property should, on her death, pass to her husband *jure mariti,* or to her next of kin and heirs at law, or to some other beneficiary on whom she might see fit to bestow it. Our rule for the con-

struction of statutes intended to alter the common law is that a statute will not be construed to alter the common law further than the act expressly declares, or than is necessarily implied from the fact that the act covers the whole subject-matter. *State* v. *Cooper,* 120 Tenn. (12 Cates), 549, 113 S. W., 1048, 15 Ann. Cas., 1116. This rule is well supported by the weight of authority, as may be seen by reference to the cases cited in *Sarah Lillienkamp* v. *W. T. Rippetoe* and *J. C. Bennett et al.* v. *Jefferson Hutchens et al.* We think the act of 1913 does not cover the subject of the marital rights of the husband in the personal property of the wife, after her death, where she has failed to make provision as to how it shall go on the happening of that event.

We find no error in the decree of the chancellor, and the same is therefore affirmed, at appellants' cost, and the cause is remanded for further proceedings.