## J. L. J. Key *et al. v.* R. D. Collins *et al.*

## (*Jackson.* April Term, 1921.)

1. **HUSBAND AND WIFE.** Antenuptial agreements construed as other contracts.

The same rules of law governing the construction of other contracts are applicable to antenuptial agreements, and the entire instrument should be considered, together with its general scope and purpose and surrounding circumstances and conditions, to ascertain the intention of the parties. (*Post, p.* 109.)

Case cited and distinguished: Collins v. Phillips, 259 Ill., 405.

2. **HUSBAND AND WIFE.** Antenuptial agreements favored.

Antenuptial settlements are are favored in law. (*Post, pp.* 109, 110.)

Case cited and approved: Stratton v. Wilson, 170 Ky., 91.

3. **HUSBAND AND WIFE.** Right of surviving husband cut off by marriage agreement if language clear.

The right of husband as survivor can be cut off or abridged by a marriage agreement, but this must clearly and plainly appear from the language used in the agreement. (*Post, p.* 110.)

4. **DESCENT AND DISTRIBUTION.** Husband's rights as survivor may be exercised where wife dies possessed of separate estate settled by antenuptial agreement.

Even though personal property be settled on the wife by antenuptial or other agreement to her sole and separate use with power to dispose thereof by deed or will, nothing else appearing, if she dies possessed of the separate estate and interest, the husband's rights as survivor may be exercised. (*Post, p.* 110.)

Cases cited and approved: Carter v. Dale, Ross & Co., 71 Tenn., 710; Mitchell v. Bank, 126 Tenn., 669; Hays v. Bright, 58 Tenn., 325; Baker v. Dew, 133 Tenn., 126.

5. **HUSBAND AND WIFE.** Husband held to have no right as survivor on death of wife under marriage settlement.

Husband *held* to have no rights as survivor in property of wife dying intestate under an antenuptial agreement "to secure to each other, in case of death, each one's property," and providing further that the woman should retain all the property she has or may afterwards acquire "to be her own, in fact, and be free from my (the husband's) control as though we had never been man and wife." (*Post, pp.* 111-117.)

Cases cited and approved: Hamrico v. Laird, 18 Tenn., 222; Goodrich v. Bryant, 37 Tenn., 325; Marshall v. Beall, 6 How., 70; Dunlop v. Lamb, 182 Ill., 319; Hayes v. Bright, 58 Tenn., 325; Mitchell v. Chattanooga, etc., Bank, 126 Tenn., 669; Hughey v. Warner, 124 Tenn., 725.

## FROM HENRY.

Appeal from the Chancery Court of Henry County.— Hon. V. H. Holmes, Judge, sitting by interchange in place of J. W. Ross.

Lytton Taylor and G. L. Fryer, for appellants.

Fitzhugh & Rye, for appellees.

Mr. E. J. Smith, Special Judge, delivered the opinion of the Court.

On December 1, 1885, R. D. Collins and Mrs. E. A. Stevens were married, and on the day prior thereto the following antenuptial contract was executed by them:

"We, undersigned, R. D. Collins of the first part, and Anna Stevens of the second part, witnesseth that have covenanted and agree to become man and wife and in order to secure to each other in case of death each one's property do make the following marriage contract, viz.:

I, R. D. Collins, agree that the above-named Anna Ste-\ vens, my intended wife, retain all of the lands, moneys, household and furniture, together with all rents and all lands, moneys and other property that she may get by will, gift or otherwise, to be her own, in fact, and be free from my control, as though we had never been man and wife. I, Anna Stevens, of the second part, agree that the above R. D. Collins, my intended husband, retain to himself, his heirs, forever all of the lands, moneys, household, furniture and all stock of all kinds, implements, that he may be seized and possessed of, not only now, but for all time to come, and I further agree in case he should die first, not to claim any dower, or anything that belonged to him or his heirs, that the laws of this state would give me as his widow. In witness whereof we have set our names and seals the 30th day of November, 1885.

"R. D. COLLINS. [Seal.]

"E. A. COLLINS. [Seal.]

"Signed in our presence day and date above written. Test: P. C. WADE."

Both parties had been married before, and at the date of this marriage both were about fifty years of age. Mr. Collins was a widower with four children, while Mrs. Stevens was a widow without children. They lived together as man and wife for about thirty-five years, and no children were born to them. Mrs. Collins died intestate in November of 1920, and her surviving husband qualified as the administrator of her estate and claimed, *jure mariti* her personal estate amounting to about $15,000. She left surviving her some brothers, a sister, and the representatives of deceased relatives, who filed

this bill against Mr. Collins, claiming that under the above-quoted contract he as surviving husband had no right or title to her personal estate, but that the same passed to the complainants as her next of kin.

Demurrers were filed to the bill, by Mr. Collins and the surety on his bond as administrator, and with the exception of the ground involving an estoppel on his part, all the other grounds of the demurrers were overruled by the chancellor, who in his discretion granted an appeal to Mr. Collins and his surety to this court.

While several errors are assigned by the appellants, the determinative question is one of the construction of the marriage contract entered into by the parties in contemplation of marriage, on the 30th day of November, 1885.

As said by the supreme court of Illinois: "The same rules of law governing the construction of other contracts are applicable to the construction of antenuptial agreements. The entire instrument should be considered together with its general scope and purpose, and effect be given to the intention of the parties as shown by the language used. The conditions and circumstances surrounding the parties at the time the agreement was made, so far as they are shown by the record, are also proper matters to be considered." *Collins* v. *Phillips,* 259 Ill., 405, 102 N. E. 796, Ann. Cas., 1914C, 188 (1913).

That antenuptial settlements are favored in law is settled. *Stratton* v. *Wilson,* 170 Ky., 91, 185 S. W., 522, Ann. Cas., 1918B, 917, 21 Cyc., 1242.

As heretofore stated, Mrs. E. A. Stevens (called Mrs. E. A. Collins in the contract) was a widow, and Mr. Col-

lins was a widower with four children. This would indicate that much of life was behind them, and also that there might be two sets of children, in only one of which she would be primarily interested.

The rules of law applicable are settled in Tennessee, and for that reason the main question, as stated, is that of the construction or meaning of the antenuptial agreement. Before stating these rules, it is not improper to remark upon the fact that the writing shows on its face that it was not prepared by a lawyer but by some one with some acquaintance with a few law terms, but uneducated and unfamiliar with the nicer distinctions between those terms. To illustrate: It says, "We, undersigned . . . witnesseth," and the contract, though made before the marriage, is not signed by "Anna Stevens," but by E. A. Collins," and it uses the words "covenanted" and "seized."

As to the rules of law applicable:

1. The right of the husband as survivor can be cut off or abridged by a marriage agreement; but

2. For this to be done, it must clearly and plainly appear from the language used that this is the effect of the contract; and

3. Even though personal property be settled upon the wife by an antenuptial or other agreement, to her sole and separate use, with power to dispose thereof by deed or will, nothing else appearing, if she died possessed of the separate estate, and intestate, the husband's rights as survivor may be exercised. *Carter* v. *Dale, Ross & Co.,* 3 Lea, 710, 31 Am. Rep., 660; *Mitchell* v. *Bank,* 126 Tenn. 669, 150 S. W., 1141; *Hays* v. *Bright,* 11 Heisk, 325; *Baker* v. *Dew,* 133 Tenn., 126, 179 S. W. 645.

Does this contract, construed according to its plain and obvious meaning, cut off the husband's rights as survivor of his wife?

It announces in the outset that it is a "marriage contract," and specifically states its object and purpose, namely, "to secure to each other (the contracting parties), in case of death, each one's property." The one announced purpose of the contract is to secure to each his or her property against the other, "in case of death;" that is, to preclude any and all claims which either might have as a spouse to the property of the other, in case of death.

The announced object and purpose is, not to secure to each his property as against the other during their married life, but as against the survivor in case of death.

With that announced object and purpose, the contract proceeds, and then provides that the woman shall retain all the property she has, or may afterwards acquire, "to be her own, in fact, to be free from my (the husband's) control as though we had never been man and wife." That is to say, her property shall be her own "in fact," and as free from his "control" as if the parties had never been married. When it is recalled that the contract provides that (1) its purpose is to secure to each his (or her) property, as against the other "in case of death," (2) that the wife's property shall be "her own" in fact," (3) and shall be as free from his "control" as if the parties "had never been man and wife," it is obvious that the word "control" is used in the sense of "rights and claims," and used to declare that he shall have no more right or claim to her property on her death than if they had never been married.

While the principal object announced was to cut off all claims of each to the property of the other at death, it, as matter of course, cut off all rights of the spouses during life also.

This contract provides that the wife shall retain, not merely the use or control of her property, but the property itself, ''to be her own in fact,'' and that property so ''retained'' by her, to be as free from his control as though they ''had never been man and wife.''

As to his property, it provides that he too shall ''retain'' it, and that in the event he should die first, she shall claim neither dower nor anything that the laws of the State would give her as widow; carrying out the idea that his property should be ''secure'' upon his death against her claims, the same as if they had never been man and wife.

Moreover, it is unreasonable to suppose that all her rights as widow would be precluded, while his rights as surviving husband should remain unabridged.

It is said in the brief for appellants that the contract makes provision beyond the life of Mr. Collins by the use of the words ''for all time,'' and that this ''irresistibly implies the inevitable conclusion'' that the only purpose was to ''suspend'' his rights and interest during coverture.

The answer is that the contract makes no such provision from which to derive the ''inevitable conclusion.'' It does not say that Mr. Collins shall retain to himself and his heirs his property ''for all time to come,'' but that he shall retain not only all the property of which he may be seized and possessed now, but also all that he may become seized and possessed of for all time to come; that is,

that he may acquire at any time during life. The words "for all time to come" are not used to denote how long he shall retain his property, but they are used to describe the property itself; to provide that he shall retain not only the property of which he may be seized and possessed now, but also all the property he may acquire during the future.

To say that the purpose is to secure to each other each one's property in case of death, and that she shall "retain" all the property she then has or may afterward acquire by will or gift or otherwise, "to be her own, in fact," and to be as free from his control as if they had never been man and wife, is an unequivocal, undeniable exclusion of every right Mr. Collins could possibly have as husband. It could hardly be more clearly expressed, even though it could be stated more elegantly.

In *Hamrico* v. *Laird,* 10 Yerg., 222, the woman had no children, and the man was a widower with several children, as is the case here. The antenuptial contract recited that it was "right" that certain personal property should "remain hers and under her control after marriage, the same as at this time," and it then provided that she should "keep for her own use, to be at her own disposal, '$450.00;' " and the intended husband relinquished all claim he had, or could have, to the property that he might acquire by the marriage, and that she should have as much right, power, and authority "as if the marriage had never taken place."

The court held that the husband's rights as survivor were precluded. The fact that she had no children, and that he did, was considered, and the provisions that she

was to hold the property "after marriage as before," and that he relinquished all claims that he had by reason of the marriage, were remarked upon. This court said that "language more strongly appropriate" could not have been adopted.

In *Goodrich* v. *Bryant,* 5 Sneed, 325, it appeared that Goodrich and his wife separated and he executed a writing, reciting that he had executed certain notes to one Bryant for the use of Mrs. Goodrich, for her exclusive use and benefit, and bound himself never to set up any claim to any property that she "may at any time be owner of, or possessed of." Upon her death he sought as husband to recover a part of the fund he had settled upon her.

The court said under the circumstances he could not recover; that the terms used are "too strong" to be limited to his rights during her life. The principle of *Hamrico* v. *Laird,* 10 Yerg., 222, was approved and followed.

In *Marshall* v. *Beall,* 6 How., 70, 12 L. Ed., 347, the man and woman entered into an antenuptial contract in 1830, whereby it was agreed that she should hold certain personal property "in herself." After the marriage some of this property came into the husband's hands. In 1834 another agreement to secure the wife a part of her property was entered into between the man and his wife, with B. as trustee for them. Among other things it was provided that B., the trustee, should hold $1,500 "for the sole and separate use of the said Ann (the wife), her executors, administrators and assigns, free and clear from any control or demand of the said Robert Mar-

shall,'' the husband.   She had power to dispose of the property, but failed to exercise it, and died intestate.

The court said the agreement of 1830 was ''vague,'' but that under the circumstances it was the purpose of the agreement of 1834 to carry the wife's title beyond life, and to exclude the husband; that the terms of the contract of 1834 showed this to be the intention of the parties; and is was decreed accordingly.

In *Dunlop* v. *Lamb,* 182 Ill., 319, 55 N. E., 354, it was held that when it was provided in the agreement that the wife should have the sole control of her property and that the husband would, on request, join in any deed necessary more effectually to extinguish his right of inheritance, the husband was barred, though he was never requested to make any deed.

*Hays* v. *Bright,* 11 Heisk., 325, and *Mitchell v. Chatta-nooga, etc., Bank,* 126 Tenn., 669, 150 S. W., 1141, are not apposite, for the reason that neither presents a contract whose language and terms are so similar to the one now under consideration as to require the application of the rule, as it was applied in those cases.

In *Hays* v. *Bright,* 11 Heisk., 325 (1872), the ante-nuptial settlement provided that the wife should have ''the use, control and management'' of all the property she then owned, and that she and her trustee might sell any part of it; the proceeds of such sale to be applied to her use as she might direct.

The wife left a will, disposing of a certain chest and its contents—the money in controversy.

An administrator was appointed later, and the will was probated.   It was contested and established, but no executor ever qualified.

The suit was by the husband against the administrator to recover the $118 in the chest which the will had given to the testatrix's daughter.   The husband claimed *jure mariti*.

The court said that the question of the validity of Anna Hays' will "does not arise in the case," and could not be considered even if it did arise.  11 Heisk., p. 331.

The husband was allowed to recover, on the ground that "the only construction" the language of the contract would bear was that the wife desired to resume the control of her property for her own use and benefit, and with power to sell, but that there was "nothing which looks to the disposition of her property after her death;" and that "the controlling object" was to secure the use and benefit of her property while she lived.  11 Heisk., p. 330.

In *Hughey* v. *Warner,* 124 Tenn., 725, 140 S. W., 1058, 37 L. R. A. (N. S.), 582, the court said with reference to *Hays* v. *Bright,* 11 Heisk., 325, that the settlement in that case confined the power of disposition by sale, and that "this necessarily excluded the power of disposition by will."

In *Mitchell* v. *Chattanooga Savings Bank,* 126 Tenn., 669, 150 S. W., 1141.  (1912), the husband during marriage gave money from time to time to his wife, which she deposited in bank to her own credit.   She died intestate. The husband took the money, the bank paying it to him without objection.   The husband died.   After his death the relatives of the wife had an administrator appointed for her, who sued to recover this money.

The court held that the estate or right of the wife under the gift from her husband was the same as if the gift

had been made by a third party, that he was not excluded beyond the term of the marriage, and that upon the wife's death the husband was entitled to the money *jure mariti*.

The court held that under our statute the wife could have disposed of the property by will, but as she did not, and the rights of the husband were abridged only during coverture, by the settlement or gift which he had made, he could take *jure mariti*.

These cases have expressly recognized the rule that if in the instrument creating a separate estate the language clearly indicates a purpose to cut off the husband's rights after, as well as during, coverture, it will have that effect.

From an examination of the authorities, both in Tennessee and elsewhere, in which we find there is no substantial conflict, we conclude that the language of the contract involved in the case at bar is such as to clearly and plainly exclude the husband's rights, not only so long as Mrs. Collins lived, but also to exclude his rights as surviving husband.

To quote from *Hamrico v. Laird, supra,* "Language more strongly appropriate" to cut off the husband's marital rights could not have been employed.

It results that the decree of the chancellor in overruling the demurrers of the appellants is affirmed, and the case will be remanded to the chancery court of Henry county for further orders and proceedings not inconsistent with this opinion.

The appellants will pay the cost of this appeal.