**Olena HALL, Executrix of the Estate of Margaret F. Jeffers, deceased Plaintiff–Appellee,**

v.

**Wayne R. JEFFERS, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 11, 1988.

Permission to Appeal Denied by Supreme Court Jan. 3, 1989.

Kyle K. King, Greeneville, for defendant-appellant.

John L. Bowers, III, with Allen, Nelson and Bowers, and John Leonard Bowers, Jr., Elizabethton, William S. Todd, with Todd and Dossett, Kingsport, for plaintiff-appellee.

OPINION

SANDERS, Presiding Judge (Eastern Section)

The Defendant has appealed from a chancery decree declaring he is estopped from asserting any rights as a surviving spouse in the estate of his deceased wife, including the right to a distributive share of her estate, a year's support, exempt property or homestead.

The Defendant–Appellant, Wayne R. Jeffers, and Margaret Jeffers, now deceased, were married in 1972. They were each about 40 years of age at the time of their marriage and each had a considerable amount of property. The properties of the Defendant consisted primarily of properties which he owned jointly with his brother, James H. Jeffers. The two brothers were partners in the real estate and farming businesses known as Jeffers Brothers Auctioneers and Jeffers Brothers Farms. After the marriage and until 1982 Margaret Jeffers was employed by the partnership in its real estate business. The partnership prospered and did considerable real estate buying, selling and trading. As real estate was acquired the deeds to the properties were put in the names of James H. Jeffers and wife, Mary Ruth Jeffers, and Wayne R. Jeffers and wife, Margaret Jeffers, as tenants by the entireties.

In 1985 Margaret Jeffers sued the Defendant, Wayne Jeffers, for a divorce in which she sought a divorce and an equitable division of real and personal property. At that time the Jeffers owned 39 parcels of real estate which had an appraised value of approximately $1,800,000. They also owned a substantial amount of farm machinery and livestock. The record also shows Margaret Jeffers had assets of approximately $400,000, part of which she owned at the time of marriage and part of which she had inherited after the marriage.

The Defendant filed an answer to the divorce complaint in which he denied the Plaintiff was entitled to any relief. He also filed a counter complaint in which he sought a divorce. He also alleged that prior to the marriage the parties entered into a prenuptial agreement agreeing if the marriage was dissolved they would each retain their separate properties and under the terms of the agreement Margaret Jeffers was not entitled to share in his property.

Later, quitclaim deeds were prepared to convey all the real estate from James H. Jeffers and Mary Ruth Jeffers and Wayne R. Jeffers and Margaret Jeffers to "Jeffers Brother Auctioneers" and "Jeffers Brothers Farms," a partnership composed of James H. Jeffers and Wayne R. Jeffers. The deeds were executed by the other parties but Margaret Jeffers refused to sign them.

James H. Jeffers then filed a suit in the chancery court against Margaret Jeffers alleging the partnerships of Jeffers Brothers Auctioneers and Jeffers Brothers Farms were the beneficial owners of all the real estate and the individuals in whose names the deeds were made owned no interest in the properties and asked the court to remove the name of Margaret Jeffers from the deeds as a cloud on the titles.

Margaret Jeffers filed an answer denying the property belonged to the partnerships, but insisted it was owned by her and her husband and James H. Jeffers and his wife as tenants by the entireties.

Neither this case nor the divorce case were ever tried because James H. Jeffers shot and killed Margaret Jeffers on the day the divorce case was set for trial.

The record shows that some time in 1985 Margaret Jeffers executed a holographic

will. We do not have a copy of the will before us but it appears a nephew is the primary beneficiary of her will. The Plaintiff–Appellee, Olena Hall, is the executrix of the will. As executrix of the will she filed a declaratory judgment suit against the Defendant, Wayne Jeffers, alleging she had been advised he would probably petition the probate court for rights and benefits of a surviving spouse. She further alleged he is not entitled to such rights and benefits because of the alleged antenuptial agreement which he and decedent entered into prior to marriage. She further alleged, since the Defendant had filed a sworn pleading alleging the contents of the oral prenuptial agreement, that was sufficient to satisfy the statute of frauds and he was estopped under the doctrines of both equitable and judicial estoppel to assert any claim against decedent's estate. She asked the court to enter a declaratory judgment accordingly.

The Defendant, for answer, denied the provisions of the prenuptial agreement were such as to bar him from claiming his full statutory benefits of the estate or that he was estopped if he elected to do so.

Upon the trial of the case the chancellor found the issues in favor of the Plaintiff. The chancellor held the Defendant was judicially estopped from asserting any rights as the surviving spouse against the estate and enjoined him from taking any further steps relative to an elective share, a year's support, exempt property or homestead.

The Defendant has appealed, assigning five issues for review. We think, however, the pivotal issue is whether or not the terms of the prenuptial agreement are such as to preclude the Defendant, as the surviving spouse, from taking an elective share of the estate as provided by statute. We hold it does not, and reverse.

Since the prenuptial agreement was an oral agreement and since the Plaintiff relies upon the allegations of the Defendant's counter claim as to what the terms of that agreement were, it is necessary we look to that document for a determination as to whether or not the terms of the agreement were such as to preclude the Defendant

from claiming the surviving spouse's statutory share of the estate. In the early case of *Key v. Collins*, 145 Tenn. 106, 236 S.W. 3 (1921) the court stated the rule as follows:

The right of the husband as survivor can be cut off or abridged by a marriage agreement; but

For this to be done, it must clearly and plainly appear from the language used that this is the effect of the contract;.... *Carter v. Dale, Ross & Co.*, [71 Tenn. 310] 3 Lea, 710, 31 Am.Rep., 660; *Mitchell v. Bank*, 126 Tenn. 669, 150 S.W. 1141; *Hays v. Bright*, [58 Tenn. 325] 11 Heisk, 325; *Baker v. Dew*, 133 Tenn., 126, 179 S.W. 645.

Id. 145 Tenn. 110, 236 S.W. 3.

After quoting further authority, the court said:

These cases have expressly recognized the rule that if in the instrument creating a separate estate the language clearly indicates a purpose to cut off the husband's rights after, as well as during, coverture, it will have that effect.

Id. 145 Tenn. 117, 236 S.W. 3.

In the same case the court quoted with approval the guidelines for construing antenuptial contracts as follows:

"The same rules of law governing the construction of other contracts are applicable to the construction of antenuptial agreements. The entire instrument should be considered together with its general scope and purpose, and effect be given to the intention of the parties as shown by the language used. The conditions and circumstances surrounding the parties at the time the agreement was made, so far as they are shown by the record, are also proper matters to be considered."

Id. 145 Tenn. 109, 236 S.W. 3.

In a later case of *Sanders v. Sanders*, 40 Tenn.App. 20, 288 S.W.2d 473, the court enlarged somewhat on the interpretation of antenuptial agreements by quoting with approval as follows:

"An antenuptial settlement or agreement is to be construed in general ac-

cording to principles applicable to the *construction of deeds and contracts* generally. Such a settlement or agreement, however, since it is favored by public policy, is to be construed liberally to effect the intention of the parties, irrespective of the ordinary legal construction of words used therein and of externals and the form of the instrument; indeed, form will be totally disregarded to get at the substance of the intention of the parties, and the agreement or settlement will not be held *invalid for technical or trifling reasons.*" Id. 288 S.W.2d 477.

The counter complaint, after alleging the parties owned separate estates at the time of marriage and agreed to keep their properties separate, set forth the pertinent part of their agreement as well as the reason for putting the properties in their joint names, as follows:

> The parties further covenanted and agreed that if the marriage was to be dissolved, for any reason, that Counter-Defendant's assets would remain intact as her separate assets, and, consequently, that any pre-owned assets prior to the marriage of the Counter-Plaintiff and any that accured [sic] during the marriage either by use of the funds and assets pre-owned would be the separate property of Jeffers Brothers Partnership, which your Counter-Plaintiff was a 50% owner thereof. The parties agreed that in the event the marriage was dissolved, that these funds would be the sole and individual assets of the Counter-Plaintiff including all real property acquired before and during said marriage, even though the record title may be in joint names.

> Counter-Plaintiff would further show unto the Court that the bare legal title to the partnership real property was placed in the joint names of the parties for tax purposes only, with the verbal agreement as heretofore stated, and upon the advice of counsel.

> Counter-Plaintiff would further show unto the Court that in essence, the parties covenanted and agreed in a pre-nuptial agreement as follows:

> "In the event the marriage failed, and was to be dissolved, each of the parties' assets was to be the separate property of each of the parties; that is, all of the real and personal property acquired before or during said marriage, even though the legal title may be in both names, shall be re-conveyed to the party whose earnings purchased those assets, and if the earnings of one party was the total purchase price of those assets, then that person would own those assets; and if any purchases were acquired with funds belonging to the parties on an equal basis from their separate property, then each party would share equally in the benefits from said investment in the event the marriage failed; however, in the event of the dissolution of the marriage, it was covenanted and agreed that the party whose funds had actually paid for the purchase of any real or personal property, that the other party would quitclaim all of their [sic] right, title, claim or interest in said property to the purchasing party." The purpose of placing the legal title in the name of Counter-Defendant was to avoid as much state and federal inheritance tax as possible, in the event Counter-Plaintiff predeceased the Counter-Defendant.

It is the insistence of the Appellee that since the first paragraph of the portion of the counter complaint quoted above states, "[I]f the marriage was to be dissolved, for any reason, that Counter-Defendant's assets would remain intact as her separate assets ...," the court should construe this to mean if the marriage were terminated by divorce or death the terms of the agreement were to come into play. The Appellant, however, insists that since the fourth paragraph quoted above states, "In the event the marriage failed, and was to be dissolved, each of the parties' assets was to be the separate property of each of the parties ...," the court should construe this to mean that only in the event the marriage is dissolved by divorce are the terms of the agreement to come into play.

We cannot agree with either insistence. The rule of law that in the construction of contracts the court must look to all four

corners of the contract is so well established that citation of authority is unnecessary. At no place in the agreement, as described in the document before us, does it say what is to occur in the event of death. It does recite that in the event the marriage fails and is dissolved under certain circumstances the parties would execute quitclaim deeds for their interest in certain properties. This, of course, contemplates both of the parties would have to be living for this to take place. However, it is silent as to what is to take place in the event one of the parties is deceased.

It is also a well-settled rule in this jurisdiction that the courts will adopt the interpretation given to a contract by the parties to the contract. In the case of *Canton Cotton Mills v. Overall Co.*, 149 Tenn. 18, 257 S.W. 398, the court quoted with approval 149 Tenn. at 29, 257 S.W. 398:

"The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts, but the declarations of the parties may be considered." 8 Williston on Contracts, par. 623, citing many authorities, including *State v. Board of Trust*, 129 Tenn. 279, 329, 164 S.W. 1151.

*Also see Womble, et al. v. Walker, et al.*, 181 Tenn. 246, 181 S.W.2d 5 (1944).

The record shows that all the property here involved which was acquired after the marriage was placed in the names of the parties as tenants by the entireties. This would indicate it was the intention of the parties that the surviving spouse would own the property irrespective of the source of funds by which it was purchased. It was done to save estate taxes "in the event Counter–Plaintiff predeceased Counter–Defendant."

While we have no difficulty in finding that the chancellor was correct in his determination that the oral premarital agreement as set forth in the counter complaint is binding and enforceable against the Defendant, we are unable to find from the language used that it "clearly and plainly" cuts off or abridges the right of the Defendant to dissent from the will or other rights as a surviving spouse.

In 1977 the legislature passed Chapter 25 of the Public Acts of Tennessee which defined who was not a surviving spouse for the purpose of descent and distribution. That act, as further amended in 1987 without material change, is now codified as T.C.A. § 31-1-102. As pertinent here, it provides: "(b) For the purposes of this title, a surviving spouse does not include: ... (3) A person who was a party to a valid marital dissolution agreement or a valid proceeding concluded by an order purporting to terminate all marital property rights." In the case of *In Re Estate of Montesi*, 682 S.W.2d 906 (1984) our supreme court had occasion to interpret this statute. In doing so the court, speaking through Justice Harbison, said:

We are of the opinion that only if the agreement purports to conclude *all* material rights and to effect a full settlement thereof under *all* contingencies would it have the effect of waiving the right to dissent or other rights of the surviving spouse. (Emphasis ours.)

Id. 911.

In the case of *Uhrig v. Pulliam*, 713 S.W.2d 649 (Tenn.1986) our supreme court determined decedent's wife was not a "surviving spouse" under T.C.A. § 31-1-102(b)(3). The parties executed an antenuptial agreement in which they provided: "... no property shall pass to the other upon death *unless* and *until* a will to that effect has been executed by us...." (Emphasis ours.) The court held this agreement constituted a valid property settlement. It expressly stated it was to become effective upon death and purported to terminate all marital rights upon that event unless a will containing contrary provisions was executed. Consequently, decedent's wife was held not to be a surviving spouse under the statute.

The agreement between Wayne and Margaret Jeffers does not appear to divest a surviving spouse of all marital rights under all contingencies.

The issues are found in favor of the Appellant. The decree of the chancellor is

reversed and the complaint dismissed. The cost of this appeal is taxed to the Appellee and the case is remanded to the trial court.

CANTRELL, J., and WILLIAM H. INMAN, Special Judge, concur.