# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><strong>IN RE: ESTATE OF MARION</strong></td><td>)</td><td>Henderson County Probate No. P-343</td></tr>
<tr><td><strong>ENGLISH TRUETT, Deceased</strong>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>C. A. No. 02A01-9605-PB-00118</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

_____

From the Probate Court of Henderson County at Lexington.
**Honorable Joe C. Morris, Chancellor**

FILED

**April 7, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

**Carthel L. Smith, Jr.**, Lexington, Tennessee
Attorney for Respondent/Appellant.

**Howard F. Douglass**, Lexington, Tennessee
Attorney for Petitioner/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**HIGHERS, J.** : (Concurs)

Rebecca H. Moore Brown appeals the trial court's order which awarded Appellee

Ellis Truett, Jr., one year's support in the amount of $21,500, as well as exempt property, from the estate of Truett's deceased wife, Marian English Truett.

Ellis R. Truett, Jr., filed a petition to set aside exempt property[1] and one year of support[2] from the estate of his wife, Marian English Truett (the Decedent), who died intestate on October 23, 1989. Truett previously was appointed as administrator of his wife's estate. Truett's petition alleged that the Decedent's estate had a value of approximately $39,500 and that Truett's anticipated living expenses for one year were $21,500. Truett later filed an initial inventory statement showing the following assets in the Decedent's estate:

| 1. | Hilton Bond | $10,000.00 |
| 2. | Chrysler Bond | $18,900.00 |
| 3. | Miscellaneous furniture | $ 5,000.00 |

Thus, the inventory showed the Decedent's estate to be worth $33,900.

The Decedent also was survived by three adult children from a previous marriage (collectively, the Hazelwood children). Appellant Rebecca H. Moore Brown was the only one of the Decedent's children to file an answer to Truett's petition. In her answer, Brown raised, as an affirmative defense, that Truett was not entitled to statutory support and exempt property because Truett previously waived these rights in an antenuptial agreement entered into between Truett and the Decedent.

---

[1]In the event of a spouse's death, the surviving spouse is entitled to the following exempt property from the deceased spouse's estate:

> [T]he family Bible and other books, the family automobile, all wearing apparel of the deceased, all household electrical appliances, all household musical and other amusement instruments, and all household and kitchen furniture, appliances, utensils and implements.

T.C.A. § 30-2-101(a)(1) (Supp. 1988).

[2]In the event a spouse dies intestate, the surviving spouse is entitled to

> [A] reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse.

T.C.A. § 30-2-102(a) (Supp. 1988).

At trial, Truett testified that he was in his early 60's when he married the Decedent. Shortly after their marriage, Truett and the Decedent entered into a verbal agreement, which Truett described as follows:

> We had an agreement that the second spouse -- the surviving spouse could hold all the properties together until the death of the second spouse, and then the personal property, including furniture, would go to either her family if it came from, you know -- from the Hazelwoods, or from my family if it came from the Truetts.
>
> . . . .
>
> In either event, the surviving spouse was supposed to -- could retain the property during their lifetime.

Truett explained that the property mentioned in the agreement "only referred to the furniture, the household furnishings." Initially, Truett testified that the Hazelwood children, including Brown, could remove from the household all of the furniture that came from the Decedent's family. The "Hazelwood furniture" included an antique corner cupboard, the master bedroom suite, twin beds, two chests of drawers, an antique poster bed, an antique rocking chair, an antique cedar chest, a table, some pictures, china, silverware, and an antique tennis racquet.[3] Truett asked only that the Hazelwood children wait until after April 1996 to get the furniture because Truett was expecting visitors that month. Later in his testimony, however, Truett indicated that he did not intend to abide by the agreement. With regard to his request for one year's support, Truett testified that his living expenses for one year totaled $21,231.56. Truett acknowledged that a support award in the amount requested would totally consume the Decedent's estate, after the payment of funeral expenses, medical expenses, and attorney's fees.

At the trial's conclusion, the trial court awarded Truett one year's support in the amount of $21,500 and the exempt property, including the Hazelwood furniture. On appeal, Brown contends that the trial court erred in awarding Truett statutory support and exempt property in contradiction of the marital agreement previously entered into between Truett and the Decedent. Additionally, Brown challenges the amount of statutory support awarded, contending that the award

---

[3]Truett also mentioned a coin collection which he already had given to one of the Decedent's sons.

did not represent Truett's actual living expenses and that the award was excessive given the value of the Decedent's estate and Truett's other financial resources.

As an initial matter, we must reject Brown's argument that, by entering into the foregoing agreement with the Decedent, Truett effectively waived his right to statutory support and exempt property. It is true that a spouse may waive his rights as a surviving spouse under the descent and distribution statutes by entering into an agreement which purports to terminate all marital property rights. *Uhrig v. Pulliam*, 713 S.W.2d 649, 653-54 (Tenn. 1986); T.C.A. § 31-1-102(b) (Supp. 1988).[4] In order to have the effect of waiving the rights of a surviving spouse, however, the agreement must purport "to conclude all marital rights and to effect a full settlement thereof under all contingencies." *In re Estate of Montesi*, 682 S.W.2d 906, 911 (Tenn. 1984); *accord Hall v. Jeffers*, 767 S.W.2d 654, 658 (Tenn. App. 1988).

The agreement in the present case did not effectively waive Truett's rights as a surviving spouse because the agreement did not purport to conclude all marital rights of the Truetts, nor did it purport to effect a full settlement of their marital rights under all contingencies. Instead, the agreement merely set forth what would happen to their household furnishings in the event of the death of either spouse. In that event, the agreement gave the surviving spouse the right to use the household furnishings of the deceased spouse for the life of the survivor. Upon the survivor's death, the household furnishings were to be distributed to each spouse's children according to whether the origin was "Hazelwood" or "Truett."

In *Montesi*, our Supreme Court recognized that "[t]here might be valid property settlement agreements between spouses executed for limited purposes," and affecting "only a small portion of the total assets of the parties." 682 S.W.2d at 911. Such agreements, however, are not effective to waive a surviving spouse's rights under the descent and distribution statutes unless they purport to conclude all marital property rights. *Id.*; *see also Hall v. Jeffers*, 767 S.W.2d 654, 658 (Tenn. App. 1988) (concluding that, although oral premarital agreement was binding and enforceable

_____

[4]Under the descent and distribution statutes, a surviving spouse does not include "[a] person who was a party to a valid marital dissolution agreement or a valid proceeding concluded by an order purporting to terminate all marital property rights." T.C.A. § 31-1-102(b)(3) (Supp. 1988).

against defendant, agreement's language did not clearly and plainly cut off or abridge defendant's rights as surviving spouse). We hold that the agreement in the present case is ineffective to constitute such a waiver of rights. *Cf. Uhrig v. Pulliam*, 713 S.W.2d 649, 651 (Tenn. 1986) (holding that antenuptial agreement was sufficient to waive rights of surviving spouse where survivor had renounced "all her right, title and interest in and to" deceased spouse's estate). In accordance with the foregoing authorities, we note that an agreement which is ineffective to waive the rights of a surviving spouse may still be enforceable against the surviving spouse as to the subject matter of the agreement. *Montesi*, 682 S.W.2d at 906; *Jeffers*, 767 S.W.2d at 658.

As for Brown's challenge of the amount of statutory support awarded, at the time of the Decedent's death in October 1989, a surviving spouse's other financial resources did not affect his entitlement to a year's support under section 30-2-102(a). *Phipps v. Watts*, 781 S.W.2d 863, 867 (Tenn. App. 1989). In *Phipps*, the estate executor challenged the amount of support awarded to the dissenting widow on the basis that the widow had received a substantial amount of property and money outside the estate. In rejecting the executor's challenge, the court stated:

> [T]he executor argues that, since the widow is able to provide for herself out of funds that passed to her as consequence of the death of the decedent, the court should reduce the amount awarded.
>
> We can see nothing in the statute that would allow the result sought by the executor. The cases interpreting the statute have said that the statute is to be construed liberally in favor of the right of the widow. *Acuff v. Daniel*, 215 Tenn. 520, 387 S.W.2d 796 (1965). We find no authority in Tennessee for construing the statute to mean that the probate court should not allow a year's support if the surviving spouse is able to support himself or herself.

*Phipps*, 781 S.W.2d at 867; *accord In re Estate of Bass*, No. 02A01-9504-CH-00094, 1996 WL 325582, at *2 (Tenn. App. June 11, 1996).[5] Accordingly, we reject Brown's argument that Truett's

---

[5]In 1993, the legislature amended section 30-2-102(a) by adding the following sentence:

> The court may consider the totality of the circumstances in fixing the allowance authorized by this section, including assets which may have passed to the spouse outside probate.

1993 Tenn. Pub. Acts 449. This amendment appears to abrogate the *Phipps* court's holding that, in awarding a year's support, the trial court should not consider the surviving spouse's other assets. *See* 2 Robert Pritchard, *Pritchard on the Law of Wills and Administration of Estates* § 656, at 210 n.181 (Jack W. Robinson, Sr., & Jeff Mobley eds., 5th ed. 1994). The added

other financial resources precluded the amount of statutory support awarded in this case.[6]

In light of the relatively modest value of the Decedent's estate, however, we initially were troubled by the trial court's award of an amount which depleted a large portion of the estate. Upon the Decedent's death, Truett, as the surviving spouse, was entitled to

> [A] reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse.

T.C.A. § 30-2-102(a) (Supp. 1988). In construing this statute, the *Phipps* court stated that:

> It appears that the words "taking into account the condition of the estate" refer to a situation in which the estate is not sufficient to pay the full year's support *without serious impairment or depletion*.

*Phipps*, 781 S.W.2d at 867 (emphasis added); *accord In re Estate of Fraker*, No. 01A01-9411-GS-00528, 1995 WL 134514, at *3 (Tenn. App. Mar. 29, 1995). At trial, Truett admitted that an award in the amount requested, $21,500, would consume most of the Decedent's estate.

Nevertheless, we affirm the amount of statutory support awarded in this case. Our research has produced little guidance as to what constitutes an excessive award under section 30-2-102(a).[7] In *In re Estate of Bass*, No. 02A01-9504-CH-00094, 1996 WL 325582, at *2 (Tenn.

---

language does not affect the disposition of the present case, however, because the amendment was not in effect at the time of the decedent's death, and the amendment is not to be applied retroactively. *In re Estate of Bass*, No. 02A01-9504-CH-00094, 1996 WL 325582, at *2 (Tenn. App. June 11, 1996); *In re Estate of Fraker*, No. 01A01-9411-GS-00528, 1995 WL 134514, at *2 (Tenn. App. Mar. 29, 1995).

[6]We also reject Brown's contention that the amount awarded did not represent Truett's actual living expenses, inasmuch as this contention was not addressed in the argument portion of Brown's brief on appeal.

[7]Prior to enactment of this statute in 1967, a surviving spouse was entitled to a "liberal allowance" or a "suitable amount" for the year's support, without regard to the estate's solvency or insolvency. *Redmon v. Fuller*, 136 S.W.2d 724, 726 (Tenn. App. 1939) (citing *Graham v. Stull*, 22 S.W. 738 (Tenn. 1893)); 1967 Tenn. Pub. Acts 146; *see also* 2 Robert Pritchard,

App. June 11, 1996), this Court concluded that the estate was not seriously impaired or depleted where the award comprised less than half of the decedent's estate. There, the trial court awarded a year's support of $14,000 out of an estate containing $33,665.21 in assets. *Id.*, at *1. In *In re Estate of Gray*, 729 S.W.2d 668, 672 (Tenn. App. 1987), on the other hand, this Court permitted an award equal to the value of the decedent's personal assets, $2,875.70, thereby allowing the year's support to deplete the assets.[8] In light of these cases, we are unprepared to hold that, as a matter of law, the support awarded in this case, which comprised less than 75% of the Decedent's personal assets, was excessive.

The trial court's order is affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)

_____

*Pritchard on the Law of Wills and Administration of Estates* § 662, at 217 (Jack W. Robinson, Sr., & Jeff Mobley eds., 5th ed. 1994) ("No definite rule for determining the amount of the allowance can be prescribed; but it should be made with reference to the actual condition of the family -- their ages, health, needs, social standing, and previous manner of living -- rather than to the amounts of the assets or to the solvency or insolvency of the estate."). This rule appears to have been altered by the statute under consideration here, which directs the trial court to take "into account the condition of the estate of the deceased spouse." T.C.A. § 30-2-102(a) (Supp. 1988).

[8]In doing so, this court followed the rule "that only the personal property and not the real property of the deceased is chargeable with a year's support." *Gray*, 729 S.W.2d at 672 (citing *Cate v. Cate*, 43 S.W. 365 (Tenn. Ch. App. 1897)). The court did not specify the total value of the decedent's estate in *Gray*.